Robert ROHRBAUGH and Carola Rohrbaugh, Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 6, 1995.

Decided July 12, 1995.

Reargument Denied Aug. 21, 1995.

Charles J. Weyandt, for petitioners.

Rosemary Chiavetta, Asst. Counsel, for respondent.

James M. Horne, for intervenor West Penn Power Co.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

In this case, due to a power company terminating electric service at a rental property during a period of sub-zero temperature weather conditions, a house was extensively damaged as a result of the freezing and rupturing of radiators and the water system. We are called upon to determine whether and to what extent a power company owes a duty of care to ensure that owners of a rental property are aware that the power company intends to terminate electric service during a period of harsh winter weather conditions.

Here, the owners of the rental property (the Rohrbaughs) appeal from the July 12, 1994 order of the Pennsylvania Public Utility Commission (PUC) 1) granting West Penn Power Company's (West Penn) October 20, 1993 exceptions to the Administrative Law Judge's (ALJ) October 1, 1993 initial decision; 2) reversing the ALJ's decision; and 3) dismissing the Rohrbaughs' complaint. We reverse.

The underlying facts as found by the ALJ were adopted by the PUC and are not disputed. The Rohrbaughs owned a residential rental property that they rented to Ethel Bisbicos. On December 4, 1989, Bisbicos in her capacity as tenant and ratepayer of record telephoned West Penn and requested that electric service be disconnected.[1] At the West Penn employee's request, Bisbicos furnished the Rohrbaughs' name as the owners of the property.

In 1983, West Penn had adopted a "landlord/tenant agreement" policy, thereby allowing landlords the option of permitting West Penn to either disconnect service or put the service in the landlord's name when it received a disconnection request from a tenant. Thus, the West Penn employee checked to see if the utility had a landlord/tenant agreement on file with the Rohrbaughs, but there was none.

In 1988, West Penn had decided to institute a strict practice of enforcing its landlord/tenant agreement policy by disconnecting service at a tenant's request if it had no signed agreement from the landlord. Thus, in the absence of a landlord/tenant agreement between West Penn and the Rohrbaughs, the West Penn employee proceeded to process the disconnection order without first notifying the Rohrbaughs.

The Rohrbaughs did not discover that West Penn had disconnected the electric service on December 7th until December 11th. At that time, they found that their property had been extensively damaged due to the freezing and rupturing of the radiators and the water system.[2]

On November 21, 1990, the Rohrbaughs filed a civil complaint with the Court of Common Pleas of Centre County (trial court) against West Penn, therein alleging that West Penn's December 7th termination of electric service without notification to them as owners was negligent, unreasonable and in violation of the PUC's regulations. Thus, they demanded monetary damages to com-

---

1. Counsel for the Rohrbaughs stipulated that Bisbicos was the ratepayer from July 27, 1988 through December 4, 1989. (March 9, 1993 Hearing Before ALJ, N.T. at 17; R.R. 59.)

2. At the hearing before the ALJ, counsel for West Penn noted that the weather conditions in Pennsylvania at the time of termination were cold and severe. (N.T. at 9–10, R.R. 51–2.)

pensate them for the damage caused by the termination.

West Penn filed an answer with new matter on July 23, 1991. Therein, it raised as an affirmative defense that the matters in the complaint were issues regulated by the PUC. West Penn later filed a motion for bifurcation requesting that the trial court bifurcate the case by referring issues of reasonableness of utility service to the PUC while retaining jurisdiction over the determination of damages. The trial court granted that motion on April 10, 1992.

The Rohrbaughs filed a complaint with the PUC on November 15, 1992. They attached their trial complaint and several related documents to the PUC's formal complaint form and requested that the PUC rule on the liability issues. The ALJ held a hearing on March 9, 1993. In a September 23, 1993 initial decision, he sustained the Rohrbaughs' complaint in part and dismissed it in part. He ordered that West Penn cease and desist from discontinuing service in accordance with its landlord/tenant agreement policy until it filed and obtained PUC approval of a tariff or tariff supplement setting forth its policy. Further, the ALJ ordered West Penn to pay a monetary penalty of $500.00.

West Penn filed exceptions to that initial decision, which the PUC granted on July 12, 1994. The PUC also reversed the ALJ's initial decision and dismissed the Rohrbaughs' complaint. The Rohrbaughs then filed an appeal with this Court.

### Issue

■ The dispositive issue here is whether West Penn's actions or inactions constituted a failure of a utility to furnish and provide reasonable and adequate service in violation of Section 1501 of the Public Utility Code (Code), 66 Pa.C.S. § 1501. This Court's scope of review from final orders of the PUC is limited to determining whether constitutional rights have been violated, an error of law committed or whether the PUC's findings and conclusions are supported by substantial evidence. *West Penn Power Company v. Pennsylvania Public Utility Commission*, 134 Pa.Commonwealth Ct. 53, 578 A.2d

75 (1990), *petition for allowance of appeal denied*, 527 Pa. 660, 593 A.2d 429 (1991).

### Discussion

Two Code sections are particularly relevant here:

§ 102. Definitions

"Service." Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities....

. . . .

§ 1501. Character of service and facilities

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees and the public.

66 Pa.C.S. §§ 102 and 1501.

■ The Rohrbaughs argue that West Penn violated its obligation to provide and maintain adequate and reasonable service by disconnecting electric service without first notifying them when it knew that electricity was being used for heating a house, that the heating system was dependent on electricity, that existing temperatures were well below freezing and that, at its own request, the tenant had provided the company with the owners' names.

■ It is undisputed that the provision of electricity is a service which a utility must furnish in an adequate and reasonable manner. West Penn simply argues that, under the Code and regulations promulgated pursuant thereto, the Rohrbaughs as non-ratepayers did not merit the protection afforded by the legislature in Section 1501. Thus, it contends that it properly terminated electric

service at the request of the ratepayer, Bisbicos, in compliance with 56 Pa.Code § 56.72.[3]

In *West Penn Power Company v. Pennsylvania Public Utility Commission,* 134 Pa.Commonwealth Ct. 53, 578 A.2d 75 (1990), we held that a utility's provision of adequate and reasonable service was not limited to the distribution of electric energy, but also included any and all acts related to that function. Thus, we concluded there that West Penn's failure to use reasonable means to identify and notify a property owner of extensive vegetation removal on an easement constituted a violation of Section 1501.

When we compare the vegetation removal in *West Penn* with the termination of electric service here, we must conclude that the disconnection of electric service to a house in sub-zero temperature weather conditions without first notifying the owners is potentially more serious than removing too many trees or maintaining vegetation in a haphazard manner. Thus, as even vegetation maintenance constitutes a service that a utility must furnish in an adequate and reasonable manner,[4] the traditional provision of electric services indubitably must be furnished in the same manner.

West Penn contends that the Rohrbaughs' status as mere property owners and not as ratepayers nullifies the Section 1501 requirement. We disagree.

The General Assembly in Section 1501 of the Code requires every public utility to furnish and maintain adequate, efficient, safe, and reasonable service as shall be necessary

or proper for the accommodation, convenience, and safety of its patrons, employees **and the public.** Not only are the Rohrbaughs members of the public, but the West Penn employee who took the disconnect order knew their identity and did not even attempt to ensure that the affected parties knew that the utility was about to terminate electric service in freezing winter weather. If utilities are required to seek out and to inform property owners of vegetation removal, then surely it is not too much of a burden for them to advise property owners of the imminent termination of electric services in extremely frigid temperatures.[5]

West Penn additionally argues that it owed no duty to the Rohrbaughs as non-ratepayers because neither the Code nor the regulations promulgated pursuant thereto provide for such a duty. In the *West Penn* vegetation case, we held that West Penn had violated the provisions of Section 1501 even in the absence of any duty set forth in the right-of-way agreement, Code or regulations. *West Penn,* 134 Pa.Commonwealth Ct. at 58, 578 A.2d at 77. Thus, we find West Penn's argument as applied to the facts of the case before us for review to be similarly without merit.

Accordingly, we agree with the ALJ that West Penn's failure to provide notice to the Rohrbaughs constituted inadequate and unreasonable electric service under Section 1501 of the Code.

---

**3.** § 56.72. Discontinuation of Service.

> A utility may discontinue service without prior written notice under the following circumstances:
> (1) Ratepayers residence. When a ratepayer requests the discontinuance at his residence, when the ratepayer and members of his household are the only occupants.

52 Pa.Code § 56.72(1).

**4.** *See also Irwin A. Popowsky, Consumer Advocate v. Pennsylvania Public Utility Commission,* — Pa.Commonwealth Ct. ——, 653 A.2d 1385 (1995), (a conditioned power service program constitutes a service under the Code); *Honey Brook Water Co. v. Pennsylvania Public Utility Commission,* 167 Pa.Commonwealth Ct. 140, 647 A.2d 653 (1994), *petition for allowance of appeal denied,* 540 Pa. 553, 655 A.2d 518 (1995) (provi-

sion of water constitutes a service under the Code); *AT & T Communications of Pennsylvania v. Pennsylvania Public Utility Commission,* 130 Pa.Commonwealth Ct. 595, 568 A.2d 1362 (1990) (quotation of telephone rates to customers constitutes a service).

**5.** In recognition of the relationship between frigid temperatures and the termination of electric services, the PUC in *Nelson E. Evans v. Duquesne Light Company,* —— Pa.PUC —— (1995) (No. C–00945775, March 3, 1995) noted that a utility's obligation to determine whether the interruption of electric service is absolutely necessary is more critical if service is to be interrupted during the **winter heating season.** Thus, the PUC found the utility's failure to notify a complainant of a planned service interruption constituted a violation of Section 1501 of the Code.

## Conclusion

For the above reasons, we reverse the order of the Pennsylvania Public Utility Commission.[6]

## ORDER

AND NOW, this 12th day of July, 1995, the order of the Pennsylvania Public Utility Commission, dated July 12, 1994, is hereby reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority finds that West Penn Power Company (West Penn) actions or inactions constituted a failure of a utility to furnish reasonable service in violation of Section 1501 of the Public Utility Code (Code), 66 Pa. C.S. § 1501, making it responsible for damages to the rental property owned by Robert Rohrbaugh and Carola Rohrbaugh (Rohrbaughs) when it terminated electric service during freezing weather causing the pipes to freeze and damage to the property. Section 1501 of the Code places no affirmative duty on West Penn to furnish electric service to the Rohrbaughs because they were not patrons or ratepayers of the utility. While I agree with the PUC that West Penn exercised very poor business judgment, the majority's extension of Section 1501's obligations owed to patron or ratepayer to those, such as the Rohrbaughs, who are neither, unnecessarily expands duties of the utility to individuals who are not paying for the service.

The facts underlying this dispute are as follows. The Rohrbaughs are owners of a residential property located at 210 Pine Grove Road in Pine Grove Mills, Pennsylvania. They had rented their property to Ethel Bisbicos (Bisbicos) in July of 1988. Pursuant to the lease agreement between those parties, Bisbicos was responsible for paying all of the utility bills, including electricity.

All the bills were in her name. Bisbicos occupied the premises from July 27, 1988 until October 31, 1989, when the Rohrbaughs evicted her from the property for nonpayment of rent. On December 4, 1989, Bisbicos telephoned West Penn and requested that electrical service be disconnected at the property she was renting from the Rohrbaughs.[1] During that conversation, she informed West Penn that the Rohrbaughs were the owners of the property. As a result of that phone call, on December 7, 1989, West Penn entered the property and disconnected the electric supply line. At that time, and for several days thereafter, temperatures in the immediate area of the premises were below freezing. As a result of the electrical service being disconnected and the freezing temperatures, the Rohrbaugh's property was without heat and due to the freezing temperatures, the pipes and radiators burst causing water to spill throughout the property and damage floors, floor coverings, walls, ceilings, the plumbing system, fixtures, and the electrical wiring.

The Rohrbaughs filed a complaint against West Penn with the Court of Common Pleas of Centre County (trial court) alleging that on December 7, 1989, West Penn terminated electrical service to their property at 210 Pine Grove Road without first providing notice to them. Arguing that West Penn's action was negligent, unreasonable and in violation of the PUC's regulations, they sought $16,000 for the damage to their property. They also filed a complaint with the PUC attaching the complaint they filed with the trial court. The PUC dismissed the Rohrbaughs' complaint concluding that West Penn was under no obligation to notify them that service was being terminated at their property because they had agreed Bisbicos was responsible for payment of electrical service to their property. This appeal by the

---

6. Under the facts of this case, there was an inadequate rendering of electric service due to the utility's failure to provide notice to the owner. Thus, because the PUC adopted the ALJ's findings of fact and the issue before us was strictly one of law, we do not believe that any additional proceedings before the PUC are necessary.

1. There is no explanation in the record as to why there was a lapse in time of more than one month before Bisbicos called West Penn to terminate her electric service.

Rohrbaughs followed.[2]

Not giving any deference to the PUC interpretation, the majority finds that it erred in determining that West Penn had provided adequate, safe and reasonable service to them pursuant to 66 Pa. C.S. § 1501. It holds that West Penn breached its duty to provide such service when it disconnected electric service to their rental property at the request of their former tenant even though it knew that electricity was being used for heating, the heating system was dependent on electricity and temperatures were below freezing, and where it was provided with the Rohrbaugh's identity but failed to give them notice of its intent to terminate service. I disagree because the Rohrbaughs do not fall within the ambit of Section 1501 because they were not patrons of West Penn, and West Penn owed them no affirmative duty to provide service.

66 Pa. C.S. § 1501 provides, in relevant part, the following:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of *its patrons*, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. (Emphasis added.)

Relative to that responsibility, the PUC has specific regulations at 52 Pa. Code § 56.72 dealing with the discontinuance of service. That section provides that a utility may discontinue service *without prior written notice* under the following circumstances:

(1) *Ratepayer's residence.* When a ratepayer requests a discontinuance at his residence, when the ratepayer and members of his household are the only occupants.

Ratepayer is defined at 52 Pa. Code § 56.2 as a person in whose name a residential service account is listed and who is primarily responsible for payment of bills rendered for the service. Under the Code, there is no responsibility by West Penn to notify landlords who are not ratepayers that electric service will be terminated to their rental property.[3]

Based on those regulations, West Penn was not required to provide the Rohrbaughs with notice that they were going to terminate service to their residential rental property because they were not the ratepayers and did not reside at the property that was damaged. Not only did the Rohrbaughs admit at the hearing before the ALJ that Bisbicos was the ratepayer, but a copy of the lease agreement between the Rohrbaughs and Bisbicos was entered into evidence, and that agreement stated that Bisbicos was the lessee and the party responsible for paying the electric bill.[4] As such, the PUC properly determined that West Penn discontinued electric service to the Rohrbaugh's property at the request of their tenant without providing them with notice because they were not patrons/rate-

---

2. Our scope of review of an order of the PUC is limited to determining whether constitutional rights have been violated, an error of law committed, or whether the PUC's findings were not supported by substantial evidence. *West Penn Power Company v. Pennsylvania Public Utility Commission,* 134 Pa. Commonwealth Ct. 53, 578 A.2d 75 (1990).

3. We note, however, that there are specific provisions at 52 Pa. Code § 56.121 regarding notice requirements to be made to a landlord-ratepayer when service is to be terminated at the residence where the service is in the name of the landlord. However, those provisions are inapplicable in this case because while the Rohrbaughs were landlords at the residence in question, they were not the ratepayers and service to provide electricity was in Bisbicos' name.

4. The lease agreement specifies: LESSEE SHALL BE RESPONSIBLE for and pay the following: fuel oil, *electric,* telephone, T.V. cable, garbage removal, snow and ice removal, mowing grass, raking leaves and controlling weeds about the property in accordance with the codes in which township the premise is located. While the Rohrbaughs also argue that the PUC erred by relying on the lease agreement because it was never made a part of the record, the Rohrbaughs attached a copy of the lease agreement to the complaint they filed with the PUC, and West Penn attached a copy of the agreement to its answer to the Rohrbaughs' complaint. As such, it was made a part of the record and the PUC did not err by relying on that document.

payers and were not the party to whom West Penn owed a duty of providing reasonable service.[5]

Accordingly, I dissent and would affirm the PUC's order.

5. The Rohrbaughs argue that even if West Penn had a right to terminate service to its residence at the request of Bisbicos, it was not excused from exercising due care to avoid unreasonable risk of harm to their property when doing so. However, the regulations are clear that there was no duty owed to them to provide notice or to ensure that they were aware service would be terminated during inclement weather.