715 A.2d 390

ADAMS SANITATION COMPANY, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF ENVIRONMENTAL PROTECTION, Appellee.

Supreme Court of Pennsylvania.

Argued Feb. 3, 1998.

Decided July 21, 1998.

James M. Brogan, Philadelphia, William Roger Truitt, Stephanie P. Brown, Baltimore, MD, for Adams Sanitation Co., Inc.

Dennis A. Whitaker, Harrisburg, for Com., D.E.P.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue presented in this appeal is whether a party who leases a parcel of land and operates a business on that parcel can be required to abate ground water contamination pursuant to Section 316 of the Clean Streams Law [1] where the record fails to demonstrate that the party was either responsible for or knew of the contamination. Because this Court finds that Section 316 permits the Department of Environmental Protection ("DEP") [2] to order an owner or occupier of the contaminated land to remedy the condition caused by pollution, regardless of fault or knowledge, as long as pollution exists under the land and removal of the pollution is feasible, we affirm the order of the Commonwealth Court granting partial summary judgment in favor of the DEP.

The facts relevant to this appeal are that on July 22, 1977, Adams Sanitation Company ("ASC") entered into a lease with Netta S. Deatrick to operate a sanitary landfill on a 108–acre parcel of land owned by Deatrick in Tyrone Township, Adams County, Pennsylvania. On February 2, 1979, the DEP issued a permit allowing ASC to dispose of solid waste on the site.

---

1. 35 P.S. § 691.316.
2. At the time this lawsuit was commenced, the DEP was known as the Department of Environmental Resources ("DER"). During this litigation, the DER was renamed the DEP in accordance with the Conservation and Natural Resources Act, 71 P.S. § 1340.301(b)(2).

ASC operated at this site under the terms of the lease until February, 1984.

On October 22, 1983, Keystone Sanitation Company ("Keystone") and ASC entered into an agreement under which Keystone acquired ASC's assets, name and tradename. Keystone also acquired ASC's lease rights and obligations to Deatrick as part of this agreement. On November 15, 1983, Keystone assigned its rights and obligations under this lease to its new, wholly-owned subsidiary, known as Adams Sanitation Company, Inc. ("appellant").

In February 1984, appellant began operations at the former ASC landfill. By the time that appellant began its operations, ASC had already filled 78 acres of the 108–acre parcel of land. Appellant subsequently filed an application with the DEP seeking permission to fill the remaining 30 acres of the 108–acre parcel of land. On February 10, 1984, the DEP granted appellant's application and issued appellant a permit allowing it to fill the remaining 30 acres.

After receiving the permit, appellant began operations and filled approximately 8.8 acres of the 30 acres covered by the permit. Even though appellant did not deposit any additional waste in the 78 acres previously filled by ASC, it did operate and maintain a leachate[3] collection and treatment system which ASC had installed on that portion of the site. As part of its operation of the leachate system, appellant made the necessary repairs to the liners of the three treatment lagoons, eliminated erosion gullies, performed revegetation work in the area and tested water samples from the five wells previously installed by ASC. Appellant also submitted monthly discharge monitoring reports on the leachate system to the DEP.

On August 21, 1990, the DEP, citing monitoring reports, advised appellant by letter that it was responsible for the water supply contamination on a residential tract of land adjacent to the 78–acre site previously filled by ASC. DEP directed appellant to provide a replacement water supply to

3. Leachate is a "liquid that has permeated through or drained from solid waste." 25 Pa.Code § 271.1.

the residence in accordance with Section 1104(a) of the Municipal Waste Planning, Recycling and Waste Reduction Act, 53 P.S. § 4000.1104(a).[4] On October 22, 1990, the DEP issued an order directing appellant to develop and implement a program to abate groundwater contamination which was emanating from the landfill pursuant to Sections 104 and 602 of the Solid Waste Management Act,[5] Sections 5, 316 and 610 of the Clean Streams Law,[6] and Section 1917–A of the Administrative Code.[7]

Appellant timely appealed both directives to the Environmental Hearing Board ("EHB") on the grounds that appellant could not be held financially responsible for remedying the condition caused by the pollution since it was the previous entity ASC, and not appellant, who had disposed of the waste responsible for the contamination. Conversely, DEP contended that the relevant statutory provisions allowed it to require either the owners or the occupiers of the contaminated land to remedy the condition caused by pollution regardless of fault or knowledge. DEP then filed a motion for summary judgment. For purposes of that motion, the parties stipulated that the contamination of the residential water supply resulted from volatile organic contaminants emanating from the 78–acre parcel of the land which ASC had utilized to dispose of waste prior to the time appellant assumed operation of the site. On April 5, 1994, the EHB granted partial summary judgment in favor of DEP. Thus, the EHB ordered appellant to restore or

---

**4.** Section 1104(a) provides that:

Any person *owning or operating* a municipal waste management facility that adversely affects a public or private water supply by pollution, degradation, diminution or other means shall restore the affected supply at no additional cost to the owner or replace the affected supply with an alternate source of water that is of like quantity and quality to the original supply at no additional cost to the owner. If any person shall fail to comply with this requirement, the department may issue such orders to the person as are necessary to assure compliance.

53 P.S. § 4000.1104(a)(emphasis added).

**5.** 35 P.S. §§ 6018.104 and 6018.602.

**6.** 35 P.S. §§ 691.5, 691.316 and 691.610.

**7.** 71 P.S. § 510–17.

replace the water supply on the residential tract of land and to comply with the DEP's directive that it submit and implement a groundwater pollution abatement program for the entire 108–acre site.

Appellant subsequently filed a timely appeal from the EHB's order to the Commonwealth Court. The Commonwealth Court, in a published opinion, affirmed the EHB's order directing appellant to repair or replace the contaminated residential water supply pursuant to Section 1104 of the Municipal Waste Planning, Recycling and Waste Reduction Act.[8] The Commonwealth Court, relying on its opinion in *Philadelphia Chewing Gum Co. v. Dep't of Envtl. Resources*, 35 Pa. Commw. 443, 387 A.2d 142 (1978), *aff'd in part sub nom., National Wood Preservers, Inc. v. Dep't of Envtl. Resources*, 489 Pa. 221, 414 A.2d 37, *appeal dismissed*, 449 U.S. 803, 101 S.Ct. 47, 48, 66 L.Ed.2d 7 (1980), also affirmed the EHB's order directing appellant to comply with the DEP's directive that it submit and implement a groundwater pollution abatement program for the entire 108–acre site pursuant to Section 316 of the Clean Streams Law. In accordance with *Philadelphia Chewing Gum*, the Commonwealth Court found that appellant was responsible for such a remedial program because it knew of, or associated itself with, the groundwater contamination emanating from the entire 108–acre tract of land. In particular, the Commonwealth Court found that appellant knew of, or associated itself with, the contamination because the facts demonstrated that appellant undertook control of the entire 108–acre parcel of land and it had operated, maintained and filed reports on the leachate system which ASC had installed at the site. This Court granted allocatur in order to address whether a party who leases a parcel of land for the operation of a business on that parcel can be required to abate ground water contamination pursuant to Section 316 of the Clean Streams Law where the record fails to demon-

---

8. The Commonwealth Court's affirmance of the EHB's order requiring appellant to repair or replace the contaminated residential water supply was not pursued by appellant in its appeal to this Court.

strate that the party either caused or knew of the contamination.

Section 316 of the Clean Streams Law provides:

### § 691.316 Responsibilities of landowners and land occupiers

Whenever the department finds that pollution or a danger of pollution is resulting from a condition which exists on land in the Commonwealth the department may order the *landowner or occupier* to correct the condition in a manner satisfactory to the department or it may order such *owner or occupier* to allow a mine operator or other person or agency of the Commonwealth access to the land to take such action. For the purposes of this section, "landowner" includes any person holding title to or having a proprietary interest in either surface or subsurface rights.

35 P.S. § 691.316 (emphasis added). Appellant here argues, as it did below, that it cannot be ordered pursuant to Section 316 to correct a condition existing on the land it leased which was caused by pollution unless it either caused the pollution or knew of the existence of the pollution. Conversely, DEP argues that it can order an owner or occupier of the contaminated land to implement a plan for the abatement of the contamination pursuant to Section 316 regardless of that party's degree of fault or knowledge of the contamination. This Court's resolution of this issue depends upon the principles of statutory construction.

The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). As this Court has noted, the General Assembly in its enactment of Section 316 "has clearly and unambiguously authorized DER [currently, DEP] to require the correction of water pollution-causing conditions without regard to the source of the pollution." *National Wood Preservers, Inc. v. Dep't of Envtl. Resources, supra,* 489 Pa. at 228, 414 A.2d at 40. Thus, this Court has already held that Section 316 is a valid exercise of the state's police powers and that the clear and plain language of Section 316 allows the DEP to order

either the owner or the occupier of land to correct the condition caused by pollution under Section 316 regardless of that party's fault in causing the contamination.[9] Moreover, the clear and plain language of Section 316 does not require the DEP to prove that an owner or occupier of land either knew or should have known of the existence of the pollution before the DEP can require that party to correct the condition caused by the contamination. Therefore, since the wording of Section 316 is clear and unambiguous, this Court finds that the DEP can lawfully require an owner or occupier of land to correct a condition which exists on the land because of pollution regardless of whether that party caused or knew of the existence of the pollution.

This construction of Section 316 is in accord with the General Assembly's stated objective expressly set forth in Section 4 of the Clean Streams Law:

### § 691.4 Declaration of policy

(1) Clean, unpolluted streams are absolutely essential if Pennsylvania is to attract new manufacturing industries and to develop Pennsylvania's full share of the tourist industry;

(2) Clean, unpolluted water is absolutely essential if Pennsylvanians are to have adequate out of door recreational facilities in the decades ahead;

(3) It is the objective of the Clean Streams Law not only to prevent further pollution of the waters of the Commonwealth, but also to reclaim and restore to a clean, unpolluted condition every stream in Pennsylvania that is presently polluted;

---

**9.** As this Court noted in *National Wood:*

[T]he notion of fault is least functional, however, when balancing the interests of a property holder against the interests of a state in the exercise of its police power, because the beneficiary is not an individual but the community. As this Court stated in an analogous setting: "The absence of facts supporting concepts of negligence, foreseeability or unlawful conduct is not in the least fatal to a finding of the existence of a common law public nuisance."

*National Wood,* 489 Pa. at 240 n. 18, 414 A.2d at 47 n. 18 (citation omitted).

(4) The prevention and elimination of water pollution is recognized as being directly related to the economic future of the Commonwealth, and;

(5) The achievement of the objective herein set forth requires a comprehensive program of watershed management and control.

35 P.S. § 691.4. From this Declaration of Policy, it is clear that the Legislature seeks to eliminate all water pollution in the Commonwealth to the extent possible.

Nevertheless, appellant urges this Court to interpret Section 316 to mean that a party is only liable for the water pollution it either caused or knew to exist before leasing or operating on the property in order for it to be required to undertake corrective action. However, appellant's position would effectively undermine the DEP's efforts in achieving the legislature's mandate set forth under 35 P.S. § 691.4 because it would require the DEP to conduct an extensive investigation into the cause of the pollution before ordering that the polluted site be remedied. This extensive investigation would in turn delay the clean-up of the water and, in some cases, actually cause the polluted condition to worsen while the DEP searched for the party which caused the pollution.

Moreover, appellant's position runs counter to the legislative mandate contained in Article I, Section 27 of the Pennsylvania Constitution, which provides:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

■ Here, appellant occupied and operated its business at the contaminated site pursuant to a lease. A tenant is considered to have a proprietary interest in the land in the common law of leases since he is regarded as a purchaser of an estate in the land for the term of the lease. *Commonwealth v.*

*Monumental Properties, Inc.,* 459 Pa. 450, 470–72, 329 A.2d 812, 822–23 (1974). As noted above, a landowner for purposes of Section 316 is one who either holds title or has a proprietary interest in the land. Since appellant occupied and had a proprietary interest in the contaminated site, the DEP was permitted to order appellant under Section 316 to correct the condition which was causing the pollution without having to prove that appellant caused or knew of the pollution.

 In the alternative, appellant argues that if this Court were to find that Section 316 permitted the DEP to order appellant to correct the condition causing the pollution, then DEP's directive requiring it to submit and implement a groundwater pollution abatement program for the entire 108–acre site pursuant to Section 316 of the Clean Streams Law without proof that appellant was either responsible for producing the pollution or had knowledge of the pollution when it leased or operated the site constitutes the Commonwealth arbitrarily exceeding its police powers in the form of an unconstitutional taking of property. A state's police power is one of the most essential powers of government which allows it to promote the public health, morals or safety and the general well-being of the community. *Commonwealth v. Harmar Coal Co.,* 452 Pa. 77, 92, 306 A.2d 308, 316 (1973), *appeal dismissed,* 415 U.S. 903, 94 S.Ct. 1395, 39 L.Ed.2d 460 (1974). The state's police powers are also one of the state's least limitable powers. *Hadacheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 60 L.Ed. 348 (1915). While the state's exercise of its police power often causes tension between the Commonwealth and property owners, the courts will not invalidate the Commonwealth's exercise of its police powers unless it is performed in an unreasonable and arbitrary manner. *National Wood, supra,* 489 Pa. at 232–33, 414 A.2d at 43.

 A party challenging the constitutionality of an exercise of the state's police power affecting a property interest bears a heavy burden of proof. *Commonwealth v. Barnes & Tucker Co.,* 472 Pa. 115, 123, 371 A.2d 461, 465, *appeal dismissed,* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977).

The standard to be used by the courts when considering whether there has been an unconstitutional exercise of the state's police power has been stated as follows:

> To justify the State in ... interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Id.* (quoting *Lawton v. Steele,* 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894)).

This Court has previously held that Section 316 satisfies the "requirement" and "means" prongs of the constitutional analysis in light of Article I, Section 27 of the Pennsylvania Constitution and the stated purpose of the Clean Streams Law. *See National Wood, supra,* 489 Pa. at 235–36, 414 A.2d at 44. Appellant neither argues or offers any argument which would warrant our re-examination of this Court's holding in *National Wood.*

Appellant, however, does argue that the DEP's actions were unduly oppressive. The determination of whether a governmental action is unduly oppressive involves consideration of the economic impact of the regulation on the property holder and whether the governmental interference with property could be characterized as a physical intrusion. *United Artists' Theater Circuit, Inc. v. City of Phila.,* 535 Pa. 370, 381, 635 A.2d 612, 618 (1993); *National Wood, supra,* 489 Pa. at 236–37, 414 A.2d at 45. Appellant fails to explain or demonstrate that the DEP's directive requiring it to submit and implement a groundwater pollution abatement program for the entire 108–acre site would have a severe economic impact on appellant's business or that the directive would be characterized as a physical intrusion by the government on the site. *See Pennsylvania Coal Company v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (regulation which made coal mining economically impractical was unconstitutional taking because it had effect of destroying claimant's leasehold

rights). Therefore, this Court concludes that appellant's constitutional challenge to the DEP's order on the grounds that the order was an unconstitutional exercise of the Commonwealth's police powers must fail.

■ Accordingly, for the reasons expressed above, this Court finds that the Commonwealth Court erred in applying the *Philadelphia Chewing Gum* test requiring the party to have either caused or to have known of the pollution's existence before it could be required to remedy the condition causing the pollution. Instead, this Court holds that DEP can require a party who leases a parcel of land for the operation of a business to abate ground water contamination pursuant to Section 316 of the Clean Streams Law without having to demonstrate that the party was responsible for or knew of the contamination. However, because the Commonwealth Court affirmed the EHB's order requiring appellant to design and implement a ground water pollution abatement program for the site on which it leased and operated its business, we affirm the order of the Commonwealth Court, albeit for different reasons. *See E.J. McAleer & Co. v. Iceland Products, Inc.,* 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977) (Supreme Court may affirm decision of any court below on any ground, without regard to the grounds on which the court below relied).

FLAHERTY, C.J., files a dissenting opinion.

FLAHERTY, Chief Justice, dissenting.

My disagreement with the majority is based on the same considerations set forth in my concurring opinion in *National Wood Preservers, Inc. v. Dept. of Environmental Resources,* 489 Pa. 221, 414 A.2d 37, *appeal dismissed,* 449 U.S. 803, 101 S.Ct. 47, 48, 66 L.Ed.2d 7 (1980). Although I agreed with the result in that case, I feared that the opinion of the court might be misconstrued as creating strict liability under the statute at issue in that case and this, *viz.* section 316 of the Clean Streams Law, 35 P.S. § 691.316. I did not believe the majority opinion in that case would permit the DER (or DEP) to

"compel the expenditure of financial sums by an owner or occupant of land *based on no other factor* but the ownership or occupancy of the land." 489 Pa. at 240–41, 414 A.2d at 47 (Flaherty, J, concurring). I regarded the "conclusion that Section 316 is a declaration of the strict liability of these appellants to correct the condition [of pollution] is erroneous as a matter of law because such a construction of Section 316 *would permit the Commonwealth to engage in regulation which constitutes the taking of property without compensation, and hence, would be an unconstitutional exercise of police power.*" *Id.*, 489 Pa. at 241, 414 A.2d at 47, quoting the late Judge Bowman in *Philadelphia Chewing Gum Corp. v. Commonwealth, D.E.R.*, 35 Pa.Cmwlth. 443, 459, 387 A.2d 142, 150 (1978).

This analysis recognized that the rights of property ownership carry concurrent obligations to society

These obligations, however, have always related to the *use* one puts to property, not mere ownership. The ancient maxim of the common law is, "Sic utere tuo ut alienum non laedas," 9 Coke 59—So *use* your own property as not to injure your neighbor. Where society requires, the property of another can be *taken*, but only with due compensation. To construe the subject Act as providing for strict liability, based on nothing more than the ownership or occupation of land, would be to impose on innocent individuals the burden which should be borne by society as a whole, thus, an unconstitutional taking.

*National Wood Preservers, Inc. v. Dept. of Environmental Resources, supra*, 489 Pa. at 243, 414 A.2d at 48.

My rejection of strict liability under the statute in question, as stated in *National Wood Preservers, supra*, applies with equal force in this case. The record herein fails to establish that Adams Sanitation Company was in any way at fault with respect to the contamination which existed on the land leased, not owned, by Adams. Nevertheless, it was ordered to treat the refuse so that the runoff contained no noxious chemicals. In my judgment, such an order under section 316 of the Clean Streams Law constitutes an impermissible exercise of the

police power. I would therefore reverse the order of the Commonwealth Court.