727 A.2d 1080

Robert ROHRBAUGH and Carola M. Rohrbaugh, Appellees

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION,**
West Penn Power Company, Intervenor

Appeal of West Penn Power Company, Intervenor, Appellants.

Robert Rohrbaugh and Carola M. Rohrbaugh, Appellees

v.

Pennsylvania Public Utility Commission, West
Penn Power Company, Intervenor

Appeal of Pennsylvania Public Utility Commission, Intervenor.

Supreme Court of Pennsylvania.

Argued Feb. 2, 1998.

Decided March 26, 1999.

200

John W. Blasko, State College, for West Penn Power Co.

Charles J. Weyandt, State College, for Robert Rohrbaugh, et ux.

Rhonda L. Daviston, Bohdan R. Pankiw, John F. Povilaitis, Harrisburg, for PUC.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The issue on appeal is whether a utility company violates its duty to provide reasonable and adequate service as required by Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501, where extensive damage is caused to a rental property after the utility company disconnects electric service for the property at a tenant/ ratepayer's request without first notifying the landlord of the disconnection, where the landlord is not the ratepayer for the electric service. Because we find that a utility company does not violate its statutory duties in such a situation, we reverse the order of the Commonwealth Court and reinstate the order of the Pennsylvania Public Utility Commission.

The relevant facts are that appellees, Robert and Carola Rohrbaugh, owned a single-family residential property located on West Pine Grove Road in Pine Grove Mills, Centre County, Pennsylvania. Appellees rented this property to other individuals as a residential home. The electric service to the property was provided by appellant, West Penn Power Company ("West Penn"). Appellees do not personally reside in an area serviced by West Penn.

In 1983, West Penn adopted a "landlord/tenant agreement" policy. The policy allowed landlords to sign an agreement with West Penn which permitted West Penn to either disconnect service or put the service in the landlord's name if the tenant notified West Penn that the tenant no longer desired electric service. This policy was instituted because West Penn was experiencing financial losses when tenants would vacate a residence and West Penn was forced to continue service

without having the ability to bill either the tenant who left the property or the landlord if the landlord refused to have service switched over to the landlord's account. West Penn notified customers of this available option via a notice enclosed in a monthly bill. West Penn's written internal procedures in effect during this time stated that West Penn would disconnect all service at the request of a tenant unless the landlord had entered into a "landlord/tenant agreement." [1] The policy was never made a part of West Penn's tariff,[2] which was filed with the other appellant, the Pennsylvania Public Utility Commission ("PUC"). Also, until 1988, West Penn never strictly enforced the policy.

In 1988, West Penn instituted a strict practice of enforcing its landlord/tenant agreement policy by disconnecting service at a tenant's request if there was no signed agreement on file with the landlord. West Penn admits that it never gave its customers advance notice of its plan to strictly enforce the policy.

In July of 1988, appellees rented their property to a tenant. Pursuant to the lease agreement, the tenant was responsible for paying all utility bills, including electricity. The tenant occupied appellees' rental property from July 27, 1988 until October 31, 1989, when the tenant vacated the premises under the threat of eviction by appellees for non-payment of rent. During this entire period, the electric bills were in the tenant's name.

On December 4, 1989, the tenant requested that West Penn disconnect the electric service at the property that she was renting from appellees.[3] While speaking with a West Penn representative, the tenant allegedly informed West Penn that

1. Appellees never signed such an agreement.

2. A tariff is defined in the Public Utility Code as "all schedules of rates, all rules, regulations, practices, or contracts involving any rate or rates, including contracts for interchange of service, and, in the case of a common carrier, schedules showing the method of distribution of the facilities of such common carrier." 66 Pa.C.S. § 102.

3. The record fails to reveal why a lapse of approximately one month existed between when the tenant vacated the rental property and when she requested that the electric service be disconnected.

appellees were the owners of the property. The West Penn representative then checked the company's files to determine whether appellees had entered into a landlord/tenant agreement with West Penn. Since there was no agreement in its files, West Penn began processing a disconnection order for appellees' rental property without notifying appellees.

On December 7, 1989, West Penn proceeded to appellees' rental property and disconnected the electric supply line to the property. Consequently, the heating system at the property was unable to function since it was dependent on electric service to operate. At the time of disconnection and for several days thereafter, temperatures in the area surrounding appellees' rental property reached below freezing. As a result of the freezing temperatures and the inability of the heating system to operate, the pipes and radiators burst, causing water to spill throughout the house and damaging the floors, floor coverings, walls, ceilings, plumbing fixtures and electrical wiring. Appellees did not discover the damage until they visited the property on December 11, 1989. This date was also the first time that appellees discovered that West Penn had disconnected the electric service.

On November 21, 1990, appellees filed a civil complaint against West Penn in the Court of Common Pleas of Centre County. The complaint alleged that West Penn's disconnection of service without notification to them as owners of the property was negligent, unreasonable and a violation of PUC regulations. Thus, appellees demanded monetary damages from West Penn in order to compensate them for the damages that the house incurred as a result of the service disconnection.

On July 23, 1991, West Penn answered appellees' complaint. One affirmative defense raised by West Penn in its answer was that the complaint raised issues within the sole province of the PUC. West Penn then filed a motion for bifurcation requesting that the issues concerning the reasonableness of its service be referred to the PUC while the issues concerning

damages remain in the trial court. On April 10, 1992, the trial court granted West Penn's motion.[4]

On November 15, 1992, appellees filed a complaint with the PUC in which they simply attached their civil complaint and requested the PUC to rule on liability issues. After conducting hearings, an administrative law judge ("ALJ") ordered West Penn to cease strict enforcement of its landlord/tenant agreement policy until it obtained PUC approval of this policy as part of its tariff, pursuant to 52 Pa.Code § 53.25.[5] The ALJ also ordered West Penn to pay a monetary penalty of five hundred dollars ($500) because he found that West Penn's discontinuance of service to appellees' property in accordance with its landlord/tenant agreement policy, which was not a part of its tariff, constituted unreasonable and inadequate service under Section 1501.

West Penn filed exceptions to the ALJ's ruling with the PUC. While the PUC believed that West Penn had exercised poor judgment in disconnecting service during a period of extreme temperatures, the PUC reversed the ALJ and dismissed appellees' complaint on the basis that the Public Utility Code and related regulations did not obligate West Penn to notify non-ratepaying landlords such as appellees that service was being disconnected at their property. The PUC determined that West Penn had furnished reasonable and adequate service to its ratepayer, the tenant, when it discontinued service to the property at the tenant's request.

On July 12, 1995, the Commonwealth Court, in a published opinion, reversed the PUC and reinstated the order of the ALJ. In doing so, the Commonwealth Court found that West

4. This Court approved of such a bifurcated procedure in *Elkin v. Bell Tel. Co.*, 491 Pa. 123, 134, 420 A.2d 371, 377 (1980).

5. 52 Pa.Code § 53.25 provides that:

[A] utility shall set forth all rules and regulations which apply generally to all classes of service covered by the tariff, and definitions of technical terms and abbreviations used in the tariff, the meanings of which are not common knowledge and cannot be gathered exactly from the context in which used. Where practicable, special rules applying to a given class of service shall be included in the rate schedule covering the particular class.

Penn had violated its statutory obligation to provide and maintain adequate and reasonable service by disconnecting electric service at appellees' rental property at the tenant's request without first notifying appellees, the property owners. The dissenting member of the Commonwealth Court panel argued that the majority unnecessarily expanded the duties that a utility company owed to individuals not paying for the service and that the majority failed to give proper deference to the PUC's interpretation of West Penn's statutory duties.

This Court granted allocatur in order to determine whether a utility company violates its duty to provide reasonable and adequate service as required by Section 1501 of the Public Utility Code where the utility company disconnects electric service for the property at a tenant/ratepayer's request without first notifying the landlord, who was not the ratepayer for the electric service and who had not entered into a contractual agreement whereby service could be continued with the account transferred to the landlord's name after the tenant requested termination. The resolution of this issue turns on longstanding principles of statutory construction and agency law.

Appellate review of a PUC order is limited to determining whether a constitutional violation, an error of law or a violation of PUC procedure has occurred and whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. Appellees contend that the PUC committed an error of law by interpreting section 1501 to allow a public utility to terminate service without providing notice to a nonratepaying landlord. We disagree.

Section 1501 of the Public Utility Code provides:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees and the public. Such service also shall be reasonably continuous

and without unreasonable interruptions or delay. Such services shall be in conformity with the regulations and orders of the commission.

66 Pa.C.S. § 1501. The PUC has been expressly granted the power and responsibility to "prescribe as to service[6] and facilities ... just and reasonable standards, classifications, regulations and practices to be furnished, imposed, observed and followed by any or all public utilities." 66 Pa.C.S. § 1504(1). Relative to this responsibility, the PUC has enacted a specific regulation at 52 Pa.Code § 56.72 concerning the discontinuance of service.[7] That regulation provides, in pertinent part, that:

A utility may discontinue service *without prior written notice* under the following circumstances:

(1) *Ratepayer's residence.* When a ratepayer requests a discontinuance at his residence, when the ratepayer and members of his household are the only occupants.

52 Pa.Code § 56.72 (emphasis added). A ratepayer is defined by PUC regulations as:

[A] person in whose name a residential service account is listed and who is primarily responsible for payment of bills rendered for the service. For the purposes of establishing

**6.** For purposes of the Public Utility Code, the term "service" encompasses numerous activities performed by a public utility company. The term "service" is defined by statute as follows:

Used in its broadest and most inclusive sense, including any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this part to the patrons, employees, other public utilities, and the public, as well as the interchange of facilities between two or more of them....

66 Pa.C.S. § 102.

**7.** The PUC regulations distinguish between the discontinuance and termination of service. The discontinuance of service involves "the cessation of service with the consent of the ratepayer and otherwise in accordance with § 56.72 (relating to discontinuance of service)." 52 Pa.Code § 56.2. The termination of service involves the "cessation of service, whether temporary or permanent, without the consent of the ratepayer." *Id.* The parties do not dispute that the present dispute involves the discontinuance of service since the ratepayer, the tenant, requested that service be discontinued.

credit, this term includes a transfer of service from a residence or dwelling within the service area of the utility or the reinstitution of service at the same location within 60 days following termination or discontinuance of service.

52 Pa.Code § 56.2.

Thus, the unambiguous language of 52 Pa.Code § 56.72, concerning the disconnection of residential service, demonstrates that a public utility can discontinue service without prior written notice when the ratepayer requests discontinuance of service.[8] Consequently, the crux of this matter is whether this regulation was validly enacted, for if it was, then a public utility cannot be said to owe a statutory duty to notify non-ratepaying landlords that service will be disconnected at their rental property.[9]

8. The dissent urges that § 56.72(1) is not applicable to this matter because the ratepayer technically was no longer residing in the property at issue when she sought termination of service on December 4, 1989. However, the Commonwealth Court characterized the record in this matter as follows:

The underlying facts as found by the ALJ were adopted by the PUC *and are not disputed.* The Rohrbaughs owned a residential rental property that they rented to Ethel Bisbicos. On December 4, 1989, Biscopos in her capacity *as tenant* and ratepayer of record telephoned West Penn and requested that electric service be disconnected....

663 A.2d at 810 (emphasis added). Appellees do not take issue with the foregoing characterization of the record by the Commonwealth Court. Indeed, in their brief to this Court, appellees essentially concede that appellants complied with § 56.72(1), arguing instead that the regulation itself is either invalid or else should be overriden by policy considerations derived from other parts of the Code. *See* Brief of Appellee at 12, 15, 20.

We do not believe that it is appropriate for this Court to create a dispute over whether the termination of service in this matter comported with § 56.72(1) when the parties themselves have determined that compliance with § 56.72(1) is not at issue, have not raised that issue herein, and thus have not tested the Commonwealth Court's characterization of the record which would indicate that there was compliance with § 56.72(1).

9. The legislature and the PUC have enacted provisions concerning notice requirements to be given to a landlord/ratepayer when service is terminated at the residence where service is in the name of the landlord. *See* 66 Pa.C.S. § 1521, *et seq.,* and 52 Pa.Code § 56.121. These provisions are not applicable here since service was never placed in appellees' name.

■ This Court has long recognized the distinction in administrative agency law between the authority of a rule adopted pursuant to an agency's legislative rule-making power and the authority of a rule adopted pursuant to interpretive rule-making power. *Girard School District v. Pittenger*, 481 Pa. 91, 94–95, 392 A.2d 261, 263 (1978). The former type of rule is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the legislative body, and is valid and is as binding upon a court as a statute if it is (a) within the granted power; (b) issued pursuant to proper procedure, and (c) reasonable. *Id.* (citing K.C. Davis, 1 Administrative Law Treatise § 503, at 299 (1958)). A court, in reviewing such a regulation, is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action involved, it is not enough that the prescribed regulations shall appear to be unwise or burdensome or inferior to another regulatory scheme. Error or lack of wisdom in a ruling is not *per se* equivalent to abuse. A regulation must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment. *Id.* (citing *AT & T v. United States*, 299 U.S. 232, 236–37, 57 S.Ct. 170, 81 L.Ed. 142 (1936)(additional citations omitted)).

■ Here, the regulation at issue was adopted pursuant to the Commission's legislative rule-making power. *See* 66 Pa. C.S. § 1504(1), *supra.* Thus, we must decide whether the regulation was (a) within the PUC's granted power; (b) issued pursuant to proper procedure, and (c) reasonable. *Girard School District, supra,* 481 Pa. at 94–95, 392 A.2d at 263. In evaluating the "reasonableness" of any discretionary agency action, appellate courts accord deference to agencies and reverse agency determinations only if they were made in bad faith or if they constituted a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Bd. of Medical Education And Licensure*, 526 Pa. 316, 322, 586 A.2d 362, 365 (1991).

Here, appellees do not argue that the regulation at issue was enacted outside the scope of the power granted to the PUC or that there was any procedural irregularity in the promulgation of the regulation. Regarding the "reasonableness" of the regulation at issue, we find that the regulation was neither arbitrary nor promulgated in bad faith, and thus that it is "reasonable" under the established test. Indeed, to hold otherwise would be to require public utilities to continue to provide service to a non-ratepayer until notice could be properly effectuated, even where the non-ratepayer had an opportunity to enter into an agreement with the public utility to protect itself but chose not to do so. Such a result would be neither equitable nor reasonable. If non-ratepaying landlords desire notice of impending termination of service, they may either (1) pay for the electric service themselves in order to reap the protection of 66 Pa.C.S. §§ 1521 et seq.; (2) file the requisite agreement, such as that offered by West Penn, with the public utility or (3) incorporate into the lease agreement a requirement that the ratepaying tenant notify the landlord within a reasonable time of any planned discontinuation of service so that the landlord has the option of continuing service once the tenant decides to terminate it. This Court will not rectify a landlord's failure to protect himself contractually by creating a statutory duty out of whole cloth for public utilities to provide notice to non-ratepaying landlords. Thus, we find the regulation promulgated by the PUC to be reasonable and not an "arbitrary execution of the agency's functions" which would render it invalid.

Accordingly, the Commonwealth Court exceeded its proper scope of review in holding that the PUC had erred by determining that the Public Utility Code and related regulations did not obligate West Penn to notify non-ratepaying landlords such as appellees that service was being disconnected at their property. The order of the Commonwealth Court is reversed and the order of the PUC is reinstated.

Justice NEWMAN did not participate in the consideration or decision of this matter.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

The majority concludes that a utility company does not violate its statutory duty to provide reasonable and adequate service as required by Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501, where extensive damage is caused to a rental property after the utility company disconnects utility service for the property at a ratepayer's request in the dead of winter without first notifying the landlord of the disconnection. In so doing, the majority reverses the order of the Commonwealth Court which found that West Penn Power Company ("West Penn") violated its statutory duty to provide reasonable and adequate service to the Appellees pursuant to 66 Pa.C.S. § 1501. I respectfully disagree with the majority's conclusion, and instead would affirm the order of the Commonwealth Court, based on West Penn's failure to follow the applicable notice procedures set forth at 52 Pa.Code § 56.72 (section 56.72) before discontinuing its provision of electric service to Appellees' property on December 7, 1989.

Section 56.72, which governs the procedures that utility companies must follow before discontinuing utility service at a specific property, provides as follows:

A utility may discontinue service without prior written notice under the following circumstances:

(1) *Ratepayer's residence.* When a ratepayer requests a discontinuance at his residence, when the ratepayer and members of his household are the only occupants.

(2) *Other premises or dwellings.* Other premises or dwellings shall be as follows:

(i) When a ratepayer requests discontinuance at a dwelling other than his residence or at a single meter multifamily residence, whether or not his residence but, in either case, only under either of the following conditions:

(A) The ratepayer states in writing that the premises are unoccupied. The statement shall be on a form conspicuously bearing notice that information provided by the ratepayer will be relied upon by the Commission in administering a system of uniform service standards for public utilities and

that any false statements are punishable criminally. When the ratepayer fails to provide a notice, or when the ratepayer has falsely stated the premises are unoccupied, the ratepayer shall be responsible for payment of utility bills until the utility terminates service.

(B) The occupants affected by the proposed cessation inform the utility orally or in writing of their consent to the discontinuation.

(ii) Where the conditions set forth in subparagraph (i) have not been met, the utility, at least 10 days prior to the proposed termination, shall conspicuously post notice of termination at the affected premises.

(A) When the premises is a multi-family residence, notice shall also be posted in common areas.

(B) Notices shall, at a minimum, state: the date on or after which termination will occur, the name and address of the utility; and the requirements necessary for the occupant to obtain utility service in the occupant's name. Further termination provisions of this chapter except § 56.97 (relating to procedures upon ratepayer or occupant contact prior to termination) do not apply in these circumstances.

(C) This section does not apply when the ratepayer is a landlord. *See* §§ 56.121—56.126 (Reserved).

52 Pa.Code. § 56.72.

For the reasons that follow, I disagree with the majority's determination that West Penn did not violate its statutory duty to provide reasonable and adequate utility service by failing to provide Appellees with advance notice of the disconnection of electric service to their property because they were not statutorily required to do so pursuant to 52 Pa.Code § 56.72(1).

The majority summarily concludes that because the tenant in the instant case was the ratepayer for Appellees' rental property, and because the tenant requested West Penn to disconnect the electric service that it provided to Appellees' rental property, West Penn was permitted, pursuant to 52 Pa.Code § 56.72(1), to discontinue its provision of electric

service to the property without first providing notice of the discontinuation to the Appellees. The majority thereby ignores the fact that 52 Pa.Code § 56.72(1) is only applicable when a ratepayer requests that a utility provider discontinue its utility service **at his residence.**

The term residence is not defined in the Pennsylvania Utility Commission's regulations. The Statutory Construction Act, at 1 Pa.C.S. § 1903(a), provides that the "[w]ords and phrases [of a statute] shall be construed according to rules of grammar and according to their common and approved usage...." This Court has "generally used dictionaries as source material for determining the common and approved usage of a term." *Fogle v. Malvern Courts, Inc.,* 554 Pa. 633, 722 A.2d 680 (1999)(citing *Love v. City of Philadelphia,* 518 Pa. 370, 374, 543 A.2d 531, 532 (1988)). BLACK'S LAW DICTIONARY defines the term residence as a "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." BLACK'S LAW DICTIONARY 1308–09 (6 th ed.1990). The definition of the term residence provided in the BLACK'S LAW DICTIONARY is virtually identical to the definition of the term set forth by this Court in *Gerstell v. Knight,* 345 Pa. 83, 26 A.2d 329 (1942). In *Gerstell,* this Court stated that " '[r]esidence, in its popular as well as its dictionary sense, means a place of abode, it is where one lives, either alone, or with one's family...." *Gerstell,* 345 Pa. at 84, 26 A.2d at 330. Upon applying the foregoing definitions of the term residence to the facts of the instant case, it becomes clearly apparent that West Penn was not entitled to rely on 52 Pa.Code § 56.72(1) as a justification for its decision not to notify Appellees of the impending disconnection of the electric service at their property.[1]

1. In the eighth footnote of its opinion, the Majority takes issue with my determination that 52 Pa.Code § 56.72(1) is not applicable to this matter. In short, the Majority asserts that Appellees have conceded the applicability of section 56.72(1), and that the Court is therefore constrained to accept the applicability of the section. However, my review of the record indicates that nowhere do Appellees expressly concede the applicability of section 56.72(1). Rather, Appellees argue in their brief to this Court that even if section 56.72(1) is applicable, and even if West

As the majority correctly notes, the tenant in the instant case vacated the Appellees' rental property on October 31, 1989, under threat of eviction for non-payment of rent.[2] The tenant did not request that West Penn discontinue its provision of electric service to Appellees' property until December 4, 1989, more than a month after she left the property on threat of eviction. By that point in time, Appellees' property was no longer the tenant's residence as that term has been commonly defined, because the tenant no longer dwelled there. Because Appellee's property was not the tenant's residence at the time that she requested that West Penn discontinue providing electric service to the property, West Penn was not entitled to rely on 52 Pa.Code § 56.72(1) as a justification for disconnecting the electric service at Appellees' property without first giving them notice.[3]

Penn complied with the terms of the regulation, West Penn still violated its statutory duty to provide reasonable service pursuant to 66 Pa.C.S. § 1501 by discontinuing the electric service at their property in the dead of winter without giving them advance notice. *See* Brief of Appellee at 12, 15, 20. Furthermore, by asserting that it is inappropriate for this Court to "create a dispute" concerning the applicability of section 56.72(1), the Majority fails to recognize that this Court may affirm the decision of the immediate lower court on any basis, without regard to the basis on which the court below relied. *See, e.g., Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447, 454 (1998); *Adams Sanitation Co., Inc. v. Commonwealth Department of Environmental Protection*, 552 Pa. 304, 715 A.2d 390, 396 (1998), *E.J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977). Appellees argued before the ALJ that the applicable notice regulation for West Penn to follow was not section 56.72(1), but section 56.72(2)(ii), because the tenant was no longer residing at the rental property when she requested that West Penn discontinue providing electric service there. (N.T., 3/9/93, at 89, 135.) Accordingly, the issue of the applicability of section 56.72(1) is apparent from the record, and is a proper basis upon which this Court can affirm the decision of the Commonwealth Court. Finally, I would add that the Majority's assertion that the Commonwealth Court's "characterization" of the record somehow indicates that section 56.72(1) was both applicable to this matter and fully complied with by West Penn is not supported by the Commonwealth Court's published majority opinion at 663 A.2d 809 (Pa.Commw.1995).

2. Appellee Robert Rohrbaugh testified at the March 9, 1993 hearing before the ALJ that he instituted eviction proceedings against the tenant in September of 1989. (N.T., 3/9/93, at 34.)

3. It is unclear from the record whether or not the tenant informed West Penn that she was no longer residing at Appellees' rental property when

However, the inapplicability of 52 Pa.Code § 56.72(1), does not end the inquiry into the propriety of West Penn's decision to discontinue its provision of electric service to Appellees' property without providing advance notice to them. Section 56.72(2) sets forth the procedures that utility companies must follow before discontinuing service at a property when the ratepayer who is requesting the discontinuation either does not reside at the property, or resides at a single meter multifamily residence. The section states that when a ratepayer requests that one of his utilities be discontinued, but does not reside at the property at which the utility service is to be discontinued, the utility company must either obtain a signed written statement from the ratepayer verifying that the property is not occupied, or get oral or written consent from the occupants of the property who would be affected by the cessation of service before proceeding to discontinue the utility service there. 52 Pa.Code § 56.72(2)(i)(A), (B).

In the instant case, West Penn did not receive a signed statement from the tenant verifying that Appellees' property was unoccupied. Nor could West Penn secure oral or written consent from the occupants of Appellees' property to discontinue the electric service there, since there were no occupants of the house at that time. Therefore, pursuant to 52 Pa.Code § 56.72(2)(ii), West Penn was obligated to conspicuously post notice of termination at Appellees' property at least 10 days prior to the proposed disconnection of service, which notices would have to state the date on which the electric service was to be disconnected, its name and address, and information on how Appellees could obtain utility service at the property in their names. 52 Pa.Code § 56.72(2)(ii), (2)(ii)(B).

she called on December 4, 1989 and asked West Penn to discontinue providing electric service to the property. Assuming that the tenant did not so inform West Penn, the utility company nevertheless should have known that the tenant was not currently residing at Appellees' property, because it knew that the heating system at the property was dependent on electric service to operate, and the tenant was requesting that West Penn discontinue providing electric service at Appellees' property in the dead of winter.

West Penn failed to abide by its obligation pursuant to 52 Pa.Code § 56.72(2)(ii) to post a ten-day advance notice of electric service discontinuation at Appellees' property. Had West Penn instead abided by its obligation to post conspicuous ten-day notices of discontinuation at Appellees property, then the Appellees would have seen the discontinuation notices when they visited the property on December 11, 1989, and would have had an opportunity to arrange to have the electric service at the property continued in their names. Instead, West Penn simply discontinued its provision of electric service to Appellees' property without providing advance notice to them, even though it knew that the heater at the property was dependent on electric service. As a result, when Appellees arrived at their property on December 11, 1989, just four days after West Penn disconnected the electric service, and just seven days after the tenant requested that the electric service be discontinued, they were greeted with a burst radiator and pipes, as well as extensive water damage to the floors, wall coverings, walls, ceilings, plumbing fixtures, and electrical wiring.

As the above discussion indicates, West Penn had a statutory duty to post conspicuous ten-day notices at Appellees' property before discontinuing its provision of electric service to the property. By failing to satisfy its statutory duty to post the notices pursuant to 52 Pa.Code § 56.72(2)(ii), West Penn also failed to provide "adequate, efficient, safe and reasonable service and facilities" as is "necessary or proper for the accommodation, convenience, and safety of its patrons, employees and the public." 66 Pa.C.S. § 1501. While the Commonwealth Court did not consider the possibility that West Penn violated its statutory notice obligations under 52 Pa. Code § 56.72, it nevertheless found that West Penn violated its statutory duty to provide adequate and reasonable service to the Appellees under 66 Pa.C.S. § 1501 based on its failure to notify them of the impending discontinuation of electric service at their property. Accordingly, I would affirm the order of the Commonwealth Court, albeit on a different basis.