# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Lester,                          :
                    Petitioner          :
                                        :
          v.                            :     No. 1778 C.D. 2015
                                        :     Argued: November 15, 2016
Department of Environmental             :
Protection,                             :
                    Respondent          :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge

**OPINION**
**BY JUDGE SIMPSON**                    **FILED: January 13, 2017**


Andrew Lester petitions for review from an order of the Environmental Hearing Board (EHB) that dismissed his appeal of a Department of Environmental Protection (DEP) administrative order requiring him to permanently close underground storage tanks pursuant to the Storage Tank and Spill Prevention Act (Storage Tank Act).[1] The EHB determined that both "owners" and "operators" were subject to the Storage Tank Act's closure requirements. Further, it determined DEP reasonably found that Andrew Lester was an "operator" under the Storage Tank Act and its regulations where he identified himself as the operator on various forms and took actions consistent with exercising control and responsibility for the underground storage tanks at issue.


In this appeal, Andrew Lester asks whether the EHB erred in determining he was an "operator" under the Storage Tank Act and its regulations

_____

[1] Act of July 6, 1989, P.L. 169, as amended, 35 P.S. §§6021.101-6021.2104.

and, therefore, financially liable for removal of the tanks. He also questions whether the imposition of such financial responsibility constitutes a "taking" of property or violates his right to substantive due process. Upon review, we affirm.

## I. Background

The EHB made the following findings. Kenneth D. Lester owns property located at 10417 State Route 6, Mead Township, Warren County, which formerly operated as a retail petroleum fueling station and an automobile repair service station known as Ken's Keystone (the property). Ken's Keystone was a full-service gas station consisting of a garage, convenience store and gas pumps.

The following four underground storage tanks are located on the property (collectively, the tanks):

| Tank Number | Date of Installation | Contents | Capacity (gallons) |
|---|---|---|---|
| 005 | Unknown | Diesel | 1,000 |
| 006 | 3/9/1999 | Diesel | 10,000 |
| 007 | 3/9/1999 | Gasoline | 8,000 |
| 008 | 3/9/1999 | Gasoline | 4,000 |

The tanks are registered with DEP. They are "underground storage tanks" as that term is defined in Section 103 of the Storage Tank Act, 35 P.S. §6021.103. Kenneth D. Lester is the "owner" of the tanks as that term is defined in Section 103 of the Storage Tank Act. The tanks generally meet the performance standards for underground storage tank systems set forth in 25 Pa. Code §245.421.

In November 2009, Certified Inspector Daniel Galvin inspected the tanks and found that all four tanks were non-compliant as to tank construction and

corrosion protection, tank release detection and piping release detection. The November 2009 inspection also reported that Tank No. 008 was noncompliant as to piping construction and corrosion protection, and Tank Nos. 007 and 008 were noncompliant as to overfill prevention.

In February 2010, Andrew Lester, the owner's son, attended a meeting with Phil Smith, Arthur Meade and Dan Peterson of DEP's Environmental Cleanup Program to discuss "each of the violations and what it would take to resolve or abate the violations" regarding the tanks. EHB Adj., 6/24/15, Finding of Fact (F.F.) No. 13 (citing EHB Hr'g, Notes of Testimony (N.T.), 1/15/15, at 210-11, Dep't Ex. N); Reproduced Record (R.R.) at 52a-53a.

Andrew Lester subsequently submitted a Storage Tank Registration Amendment Form to DEP, registering the tanks as temporarily out-of-service as of June 23, 2010. Andrew Lester signed the form and checked the box for "facility operator." F.F. Nos. 14-15; Joint Stip. of Facts at ¶¶11, 12; Dep't Ex. A; R.R. at 27b-28b, 65b.[2] The tanks have been temporarily out-of-service since June 23, 2010, and have not been operated. The tanks were required to be permanently closed if they were not put back into service by June 23, 2013.

In May 2011, DEP issued an administrative order to Kenneth Lester and Andrew Lester revoking the permit-by-rule for operation of the tanks and ordering Kenneth Lester and Andrew Lester to, among other things, empty and

---

[2] The page numbers of Volume 2 of Petitioner's Reproduced Record, in which he started over at page 1, were followed by a small "b."

3

cease operations of the tanks until DEP reinstated the permit-by-rule. The Court of Common Pleas of the 37th Judicial District (Warren County Branch) subsequently granted DEP's petition to enforce its 2011 order.

Thereafter, in August 2013, DEP inspected the property and observed the tanks were not permanently closed. A few weeks later, DEP sent a notice of violation to Kenneth Lester at the property's mailing address, informing him the tanks had not been closed and that the registration fees and Underground Storage Tank Indemnification Fund (USTIF) fees were not paid. Andrew Lester received this notice of violation.

In November 2013, Certified Inspector Wray DeLarme inspected the tanks and found that none of the tanks were compliant with respect to overfill prevention or registration certificate display.

In February 2014, DEP issued an administrative order (the "closure order") to Kenneth Lester and Andrew Lester requiring: (a) Kenneth Lester to pay $400 in registration fees to DEP for the tanks within 30 days; (b) Kenneth Lester and Andrew Lester to pay a total of $280.95 to the USTIF for fees owed on Tanks Nos. 005 and 006 and simultaneously provide proof of payment of the fees to DEP within 30 days; (c) Kenneth Lester and Andrew Lester to submit a completed Underground Storage Tank System Installation/Closure Notification Form to DEP in accordance with 25 Pa. Code §245.452, within 30 days; (d) Kenneth Lester and Andrew Lester to permanently close the tanks in accordance with 25 Pa. Code §§245.452-53, within 90 days; (e) Kenneth Lester and Andrew Lester to measure

4

for the presence of a release of a regulated substance by sampling in a manner consistent with a DEP technical document titled "Closure Requirements for Underground Storage Tank Systems" and as required by 25 Pa. Code § 245.453(a), before permanent closure was completed; (f) Kenneth Lester and Andrew Lester to begin corrective action in accordance with 25 Pa. Code, Subchapter D, and as required by 25 Pa. Code § 245.453(b), if contaminated soils, contaminated groundwater or free product as a liquid or vapor was discovered; and, (g) Kenneth Lester and Andrew Lester to submit to DEP a copy of a properly completed closure report in accordance with the DEP technical document entitled "Closure Requirements for Underground Storage Tank Systems," and as required by 25 Pa. Code §245.452(f), within 45 days of the permanent closure of the tanks.

In March 2014, Andrew Lester, representing himself, filed a notice of appeal of the closure order with the EHB. Kenneth Lester did not appeal the closure order.[3]

In December 2014, about a month before the EHB hearing, counsel entered an appearance on behalf of Andrew Lester and attempted to file an amended notice of appeal to add a claim that DEP's order constituted a taking of property in violation of the Pennsylvania and U.S. Constitutions. DEP filed a motion to strike the amended notice of appeal. The EHB subsequently issued an opinion and order in which it granted DEP's motion to strike.

---

[3] Thereafter, the 2013 and 2014 registration fees and the USTIF fees were paid.

5

A hearing on the merits of Andrew Lester's appeal ensued before the EHB. DEP presented the testimony of David Hall, a DEP Water Quality Specialist Supervisor in its Storage Tanks Program, and Arthur Meade, who formerly served as a DEP Water Quality Specialist. Andrew Lester testified on his own behalf.

After the hearing, the EHB issued an adjudication in which it dismissed Andrew Lester's appeal of DEP's closure order. In its adjudication, the EHB set forth the following discussion. This appeal concerns a DEP administrative order requiring Andrew Lester and Kenneth Lester, jointly and severally, to take certain actions directed toward permanently closing four underground storage tanks located on the property. DEP bears the burden of proof to show its issuance of an administrative order is supported by a preponderance of the evidence, is authorized by statute, and is a proper exercise of its authority. 25 Pa. Code §1021.122. The EHB's review is *de novo*: it is not limited to considering the facts that were available to DEP at the time it issued its order. Warren Sand & Gravel Co., Inc. v. Dep't of Envtl. Res., 341 A.2d 556 (Pa. Cmwlth. 1975) (en banc).

At the outset, the EHB acknowledged DEP's observation that, under the EHB's rules, any issues not argued in post-hearing briefs are waived, as well as DEP's contention that Andrew Lester only raised a single issue in his post-hearing brief. The EHB agreed that one issue for resolution was whether Andrew Lester was an "operator" under the Storage Tank Act and its regulations; however, it otherwise declined to construe Andrew Lester's post-hearing brief so narrowly. To be sure, the EHB stated, Andrew Lester took the term "brief" quite literally, but he

6

nevertheless raised additional issues such as whether DEP staff directed or misled him to improperly characterize himself as an "operator" and whether he could be liable for closure of the tanks when he had no ownership interest in them. EHB Adj. at 7.

For its part, DEP argued that it properly determined Andrew Lester was an operator of the tanks. The term "operator" is defined in Section 103 of the Storage Tank Act and its regulations as: "Any person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank." Id.; see 25 Pa. Code §245.1. The EHB noted DEP relied on two different lines of argument in support of its determination.

First, it argued the 2011 order of the Court of Common Pleas of the 37th Judicial District (Warren County Branch) collaterally estopped Andrew Lester from denying he was an operator of the tanks. Second, DEP argued that the way Andrew Lester filled out certain forms, and the actions he took, supported its finding that he was an operator. In particular, DEP asserted, in 2009, 2010 and 2013, Andrew Lester specifically identified himself as the tanks' manager or operator on various DEP forms. DEP further argued Andrew Lester's actions from 2009 through 2014, including submission of the forms, were sufficient to constitute management or supervision of the tanks and to show responsibility for operation of the tanks.

Responding to these assertions, the EHB declined to find Andrew Lester was collaterally estopped from claiming he was not the operator of the tanks.[4]

Nevertheless, the EHB ultimately found Andrew Lester was an "operator" of the tanks under the Storage Tank Act. While no single piece of evidence or action taken by Andrew Lester was dispositive, the EHB stated, in the aggregate, DEP met its burden of proving Andrew Lester "manages, supervises, alters, controls or has responsibility for the operation" of the tanks. Section 103 of the Storage Tank Act. The EHB noted it was sympathetic to the difficulties Andrew Lester encountered in trying to reopen or sell Ken's Keystone, whether for his own benefit or that of his father. Nevertheless, it credited the testimony of DEP's witnesses, and it found the weight of evidence was against Andrew Lester.

The EHB also noted that DEP relied heavily on various forms that Andrew Lester signed to support its belief that he met the definition of an operator of the tanks under the Storage Tank Act and its regulations.

---

[4] In particular, the EHB explained Andrew Lester's status as an operator at the time of the 2011 orders of the common pleas court and DEP was not the issue before the EHB. Rather, the issue was whether Andrew Lester was an operator when DEP issued the closure order. The EHB stated, if it were to accept DEP's argument, a person's status as an operator under the Storage Tank Act would be static—that is, once a person becomes an operator, that person is thereafter always an operator. The EHB declined to make such a finding here. Further, the EHB explained, neglecting to evaluate whether circumstances arising after the court order resulted in a change in Andrew Lester's status not only abdicated the EHB's duty to review cases *de novo*, but would also fall short of satisfying the criteria of the doctrine of collateral estoppel. The EHB's determination on this point is not challenged in this appeal.

To that end, in November 2009, a third-party inspection of the tanks was performed. On the DEP form documenting the inspection, Andrew Lester was listed as the representative present during the inspection. Andrew Lester checked the box on the form identifying himself as "Operator" instead of the other possible choices of "Owner," "Employee," or "None." EHB Adj. at 9. On the signature line of the same form, Andrew Lester listed his title as "Manager." Id.

In June 2010, after Arthur Meade, a DEP Water Quality Specialist, contacted Andrew Lester regarding violations related to the tanks, Andrew Lester submitted a Storage Tank Registration Amendment Form, on which he checked two boxes identifying himself as "Facility Operator" rather than "Facility Owner," "Responsible Official," or "Property Owner." Id.

Finally, in November 2013, another third-party inspection was performed. On the inspection form, Andrew Lester again marked the box identifying himself as "Operator" rather than "Owner," "Employee," or "None." Id. at 10. On the November 2013 inspection form, however, Andrew Lester listed his title as "Operator" on the form's signature line as opposed to "Manager"—the designation he used on the November 2009 inspection form. Id.

The EHB explained it was not clear that Andrew Lester truly understood the nature of the forms or that his designation on the forms would impose legal obligations on him. Andrew Lester testified that both DEP and the third-party inspectors induced him to, or at least suggested that he, mark his status as "Operator." Id. at 10. However, the EHB stated, Andrew Lester's explanations

9

of why he identified himself as an "Operator" or "Manager" when he believed himself to be merely an employee were not convincing. Id. The record revealed that Arthur Meade highlighted a box for Andrew Lester to check that would designate him as "facility operator" on the Storage Tank Registration Amendment Form in June 2010. Id. Nevertheless, Andrew Lester already represented himself as the "Operator" on the Operations Inspection Form completed approximately seven months earlier. Id. The EHB did not find the various forms indicating Andrew Lester to be "Manager" or "Operator" of the tanks to be dispositive, but on the whole, it stated, the evidence from these forms weighed in favor of DEP. Id.

In addition to the forms, the EHB stated, there were several pieces of written communication by DEP over a several-year time-period involving the tanks at the property that were submitted as exhibits. The EHB explained a review of these communications showed DEP was not consistent in how it communicated with Andrew Lester about issues with the tanks.

To that end, in December 2009, DEP sent a notice of violation relating to the November 2009 inspection. The notice of violation was addressed to Kenneth Lester only and was not clearly directed to Andrew Lester. Despite executing the November 2009 inspection form as the facility operator, Andrew Lester was only copied on the December 2009 notice of violation. A follow-up notice of violation, however, issued in February 2010, was addressed to both Kenneth Lester and Andrew Lester. DEP stated that the failure to fully comply with these two violation notices led to DEP issuing an un-appealed 2011 order in which it identified Andrew Lester as operator of the tanks.

10

The EHB further stated, despite the fact that DEP clearly identified Andrew Lester as the operator of the tanks in that order, subsequent communications in 2013 about the ongoing tank issues were addressed only to Kenneth Lester. Neither a January 2013 letter about the temporary out-of-service deadline for the tanks nor a September 2013 notice of violation resulting from a compliance evaluation conducted by DEP were addressed or copied to Andrew Lester.

However, the EHB stated, when DEP issued the closure order in February 2014, which is currently under appeal, it once again asserted Andrew Lester was the operator of the tanks. The final piece of written correspondence from DEP, a Storage Tank Registration/Permit Invoice dated October 6, 2014 listed "Andy Lester" as the "Owner/Contact" of Ken's Keystone. Id. at 11. The EHB stated it found the inconsistencies in DEP's written communications troubling, given the serious consequences that can result from a determination that a party is an operator. It stated that individuals who are potentially subject to the Storage Tank Act and its regulations and obligations deserve clear communication from DEP regarding their status. Nevertheless, when viewed in conjunction with the evidence as a whole, the EHB explained, these inconsistencies were insufficient to outweigh other evidence supporting its decision regarding Andrew Lester's status as an operator.

The EHB explained that DEP identified various actions undertaken by Andrew Lester after 2009 to support its contention that he was the operator of the

11

tanks. From 2009 until 2014, it appeared DEP only spoke with Kenneth Lester once; all other verbal communication about the facility was with Andrew Lester.

In February 2010, Andrew Lester, on his own, attended a meeting with DEP at its Regional Office in Meadville to discuss the resolution of violations with the tanks. Additionally, the EHB stated, there was testimony from both Andrew Lester and DEP witnesses that, on more than one occasion over the years, Andrew Lester attempted to obtain delivery of gasoline from a wholesale fuel provider to restart gasoline sales at Ken's Keystone. He was ultimately unsuccessful in those efforts, but in the EHB's opinion, this supported a determination that Andrew Lester exercised a certain degree of control over, and responsibility for, the tanks consistent with that of an operator.

The EHB explained there was no question that Andrew Lester's course of conduct was consistent with having greater control over the tanks and the facility than that of a mere employee. The main issue regarding his actions was whether he acted in his own interest or for his father's interest as a representative. The EHB explained it generally found the testimony of DEP's witnesses, David Hall and Arthur Meade, credible on this point. Neither witness recalled any statement from Andrew Lester indicating he was merely acting on his father's behalf. Andrew Lester testified to the contrary, but, the EHB stated, there was nothing in the written record to support his contention that he acted solely on his father's behalf. Overall, the EHB did not find sufficient evidence to support a conclusion that Andrew Lester's actions were only undertaken as a representative of his father. Reviewing the record as a whole, the EHB concluded DEP

12

reasonably determined Andrew Lester exercised sufficient control over and responsibility for operation of the tanks such that he met the Storage Tank Act's definition of an "operator." See Section 103 of the Storage Tank Act.

Finally, the EHB examined whether, as an operator, Andrew Lester was responsible for closure of the tanks. The EHB noted Andrew Lester appeared to argue that, because he had no ownership interest in the property, he could not be liable for the costs of closing the tanks. He relied on two cases, one of which was Lehigh Gas & Oil v. Pennsylvania Department of Environmental Resources, 671 A.2d 241 (Pa. Cmwlth. 1995). There, the EHB explained, Lehigh Gas & Oil appealed the EHB's determination that the company did not overcome the Storage Tank Act's statutory presumption that an owner or operator of an underground storage tank is liable for all damages, contamination, or pollution within 2,500 feet of the facility, without proof of fault, negligence or causation. This Court affirmed the EHB's adjudication, determining that "Lehigh [Gas & Oil] failed to overcome, by clear and convincing evidence, the rebuttable presumption." Id. at 247.

The EHB found it difficult to decipher the purpose of Andrew Lester's citation to Lehigh Gas & Oil—at this stage, neither damages, nor contamination, nor pollution was at issue. Rather, the EHB was concerned with whether Andrew Lester was responsible for closure of the tanks. The EHB noted the Storage Tank Act clearly holds owners *and operators* responsible for closure of tanks. See Section 502(c) of the Storage Tank Act, 35 P.S. §6021.502(c); see also Section 501(a)(6), (9), (10) of the Storage Tank Act, 35 P.S. §6021.501(a)(6), (9), (10) (requiring DEP to adopt and implement an underground storage tank program

13

which includes, among other things, "requirements for the closure of tanks," "methods and procedures for the removal of reporting underground storage tanks from service," and, "requirements for intended and completed closure of tank facilities by owners and operators.").

The EHB noted Andrew Lester also cited Luther P. Miller, Inc. v. Underground Storage Tank Indemnification Board, 965 A.2d 398 (Pa. Cmwlth. 2009), for the proposition "that the owner of the underground storage tank is presumptively the one required to register" with DEP. Andrew Lester's Post-Hearing Br. at 3. The EHB stated this was hardly a controversial position—both the Storage Tank Act and its regulations provide that the owner of an underground storage tank is required to register the tank. See Section 503(a) of the Storage Tank Act, 35 P.S. §6021.503(a); 25 Pa. Code § 245.41. The EHB explained the question in Miller, which is not at issue here, was whether a corporation was eligible to receive indemnification from the USTIF after it failed to comply with DEP's registration requirements.

In contrast, the case presently before the EHB concerned whether Andrew Lester could be held responsible for closing the tanks at Ken's Keystone, with the answer turning on whether he was an "operator" under the Act and its regulations. Having found Andrew Lester was an "operator" of the tanks, the EHB explained, he was responsible under the Storage Tank Act, along with his father (the owner), for their closure.

In its conclusions of law, the EHB stated, both an "owner" and an "operator" are responsible for closure of underground storage tank facilities in conformance with the Storage Tank Act. Section 502 of the Storage Tank Act. The EHB explained DEP proved by a preponderance of the evidence that Andrew Lester was an "operator" of the tanks as that term is defined in Section 103 of the Storage Tank Act and its regulations. Thus, it dismissed Andrew Lester's appeal. This appeal followed.[5]

## II. Issues

On appeal,[6] Andrew Lester states two issues:

1. Is an individual with no ownership interest in a closed gasoline station and real estate or to the empty storage tanks situated thereon who was induced to sign a document by an agent of [DEP] as an 'operator' financially liable for the removal of the storage tanks?

2. Does the imposition of a financial responsibility for the removal of empty gasoline storage tanks on a person with no ownership interest therein constitute a taking of his property in violation of Article 1, Section 1 of the Pennsylvania Constitution to enjoy and defend life, liberty, and acquiring, possessing, and protecting property and Amendment 5 of the United States Constitution prohibiting depriving a person of property without due process of law?

---

[5] In a single-judge memorandum opinion and order, the undersigned permitted Andrew Lester's appeal to this Court *nunc pro tunc*, or "now for then," on the ground that his failure to timely appeal from the EHB's adjudication was caused by non-negligent circumstances resulting from confusion caused by the EHB's email notification of its adjudication to Andrew Lester's counsel.

[6] Our review of an EHB order is limited to determining whether the EHB's findings were supported by substantial evidence and whether constitutional violations or errors of law were committed. Leatherwood, Inc. v. Dep't of Envtl. Prot., 819 A.2d 604 (Pa. Cmwlth. 2003).

15

Pet'r's Br. at 4 (Statement of Questions Involved).

### III. Discussion
### A. "Operator" Responsibility
### 1. Contentions

Andrew Lester first asserts DEP is attempting to impose financial responsibility for removal of underground storage tanks and remediation of any spillage against him despite the fact that he has no ownership interest in the property or the underground storage tanks. Rather, they are owned by his father, Kenneth Lester, who is the owner by deed and holder of the mortgage on the property. Andrew Lester argues the basis of DEP's action against him is its Storage Tank Registration Amendment Form, which was completed by Arthur Meade, a DEP employee, and presented to Andrew Lester who signed the contact information, which Meade highlighted. Andrew Lester contends Meade testified he did this in an attempt to give guidance to individuals such as Andrew Lester who needed assistance completing the form.

Andrew Lester maintains the tanks were placed out of service and were pumped down by their owner as required by DEP. He asserts the tanks contained a *de minimis* amount of product and the service pumps were disconnected from the tanks. As such, there was nothing to operate. Andrew Lester argues it is solely on the basis of DEP's Storage Tank Registration Amendment Form that liability is sought against him. He contends this was a misrepresentation and fraud committed on him by an individual with superior knowledge of the law and the consequences of his execution of the form to his detriment.

16

Andrew Lester argues that at the EHB hearing, he and DEP entered into a stipulation of facts. He asserts it is undisputed that he is not the owner of the gas station or the underground storage tanks. Additionally, the stipulation establishes: (1) Kenneth D. Lester is an adult with a mailing address of 892 Lance Street, Sebastian, Florida, 32958; (2) Kenneth D. Lester owns the property, which was formerly operated as a retail fueling station; (3) at the property, Kenneth D. Lester owns and operated underground storage tanks; (4) Kenneth D. Lester is the owner of the tanks; and, (5) the tanks have been temporarily out-of-service since June 23, 2010 and have not been operated.

Andrew Lester contends that at the hearing David Hall, a DEP Water Quality Specialist Supervisor, testified that between November 2009 and December 2014, the tanks were pumped and contained less than an inch of product. N.T. at 85. Andrew Lester testified his father emptied the tanks and nothing further was done because there was no need to do so given that he pumped the tanks down. N.T. at 140. Andrew Lester asserts that, what should be readily apparent is that DEP is attempting to hold him financially responsible for removal of the underground storage tanks that have been out of service on the basis that he is an "operator." He argues his father, who owns the tanks and the gas station, lives in Florida and was declared bankrupt. As a result, he contends, it is easier to proceed against him for the cost of removing the tanks than his father.

If DEP is concerned the tanks may be leaking and causing an environmental hazard, of which there is absolutely no evidence, Andrew Lester argues, it already has an order permitting it to remove the tanks. It has not done so

17

and apparently it does not intend to do so until it can find someone financially responsible. As testified to by Hall, Andrew Lester maintains, the owner and operator would be responsible for out-of-pocket costs of remediation rather than the taxpayers.

Andrew Lester further maintains the tanks have less than an inch of product in them which is *de minimis*. See 25 Pa. Code §245.1. Andrew Lester also argues it is obvious from the statutory definitions of "owner" and "operator" that Kenneth D. Lester is the owner and the question becomes how Andrew Lester is an operator when there was nothing to operate in light of the fact that the tanks were out of service in 2010 and were emptied in 2011.

Andrew Lester asserts there is no question that at various times, at the instruction of DEP representatives, he was induced to sign as facility operator or operator, on forms prepared by DEP representatives.

Andrew Lester argues DEP offered Meade's testimony in his capacity as Water Quality Specialist. He inspected the tanks beginning in 2002 and interacted with Kenneth Lester. He was well aware of the fact that between 2006 and 2009, Kenneth Lester did not respond to written communications. Meade testified in 2009 after Kenneth Lester left the state, he met with Andrew Lester. Andrew Lester indicated he was the contact person as Kenneth Lester was not in the area. In 2009, DEP sent a notice of violation to Kenneth Lester with a courtesy copy to Andrew Lester. All interaction was with Andrew Lester because Kenneth Lester did not respond.

18

Andrew Lester asserts that the operative document is the Storage Tank Registration Amendment Form. Meade testified he completed Section I, Facility and Client Information, Section II, Purpose of Submittal, and Section III, Tank Information. In Section IV, Contact Information, Meade testified as follows in response to a question from DEP's counsel:

> Q. Did you direct Andrew Lester in any way to check the boxes that are checked in – well, the box particularly checked facility operator in section four?
>
> A. Well, I didn't direct him. It was an option for him to resolve the violations. I highlighted the sections that he should complete; and on the form, I highlighted facility operator.

R.R. at 56a. When asked why he did so, Meade responded that he assists many tank owners with the forms and the information requested. He testified he "might highlight facility operator." R.R. at 57a. Meade further testified that when tanks are temporarily out of service they have to be emptied, and Kenneth Lester called him in 2011 and told him he pumped the tanks down and found one tank still had two inches of product in it, and he told Andrew Lester it needed to be emptied.

Andrew Lester argues his counsel searched diligently for any reported decision imposing liability on a person who is not an owner for remediation and removal of tanks merely because he signed a form as "operator" or "facility operator" at the suggestion of a DEP agent. He believes this is a case of first impression in this regard because there is a lack of authority to support the action taken by DEP. Rather, he maintains, this case is more akin to one of material misrepresentation or fraud, which contains the following elements: (1)

19

misrepresentation of a material fact; (2) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (3) intent of misleading another into relying on it; and, (4) justifiable reliance on the misrepresentation resulting in injury with proximate cause by reliance. Gibbs v. Ernst, 647 A.2d 882 (Pa. 1994).

Here, Andrew Lester argues, Meade was in a position of superior knowledge. He worked for DEP as a water quality specialist and dealt with Kenneth Lester since at least 2006. Andrew Lester naturally wanted to protect his father if possible and merely operated an automobile repair shop on the same property with the tanks still in the ground. Andrew Lester asserts it was obvious that Meade knew what a "facility operator" or "operator" entailed, and, as Meade previously stated, he highlighted the words "facility operator" on the form.

Andrew Lester asserts it is clear that Meade highlighted the sections to involve Andrew Lester who ran an automobile repair shop at his father's now closed gas station that had underground storage tanks that were in violation of the statute. Thus, he argues the elements of material misrepresentation or fraud are met.

## 2. Analysis

Questions of resolving conflicts in the evidence, witness credibility and evidentiary weight are within the exclusive discretion of the EHB, the fact finding agency, and are not matters for a reviewing court. Leatherwood, Inc. v. Dep't of Envtl. Prot., 819 A.2d 604 (Pa. Cmwlth. 2003). Thus, we will examine, but not weigh evidence because the EHB, as fact-finder, is in a better position to

find facts based on the testimony and demeanor of the witnesses.  Id.  Additionally, we may not substitute our judgment for that of the EHB.  Id.

Section 502(c) of the Storage Tank Act states (with emphasis added):

**(c)    Discontinued    use.**--Upon    abandonment    or discontinuance of the use or active operation of an underground storage tank, the owner and operator shall remove the tank and its contents or shall seal the tank, and restore the area in a manner that prevents any future release, and shall remedy any adverse impacts from any prior release in a manner deemed satisfactory to [DEP].[7]

In turn, Section 103 of the Storage Tank Act defines an "Operator" as: "Any person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank."  The Storage Tank Act's regulations contain the same definition.  25 Pa. Code §245.1.[8]  Further, the Storage Tank Act and its regulations

---

[7] See also Section 1311(a) of the Storage Tank Act ("Except as provided in subsection (b), it shall be presumed as a rebuttable presumption of law in civil and administrative proceedings that a person who owns or operates an … underground storage tank shall be liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution. …) (emphasis added).

[8] In addition, the Storage Tank Act regulations define a "Responsible party" as:

A person who is responsible or liable for corrective action under the act.  The term includes: the owner or operator of a storage tank; the landowner or occupier; a person who on or after August 5, 1990, knowingly sold, distributed, deposited or filled an underground storage tank regulated by the act which never held a valid registration, with a regulated substance; and a person who on or after August 5, 1990, knowingly sold, distributed, deposited or filled an unregistered aboveground storage tank regulated by the

**(Footnote continued on next page…)**

21

"shall be liberally construed in order to fully protect the public health, welfare and safety of the residents of this Commonwealth." Section 109 of the Storage Tank Act, 35 P.S. §6021.109.

Here, based on the credited evidence, the EHB determined DEP met its burden of proving Andrew Lester was an "operator" as that term is defined in the Storage Tank Act. In particular, the EHB explained (with emphasis added):

> After careful consideration, we find that Andrew Lester is an operator of the [t]anks at Ken's Keystone under the Storage Tank Act. <u>While no single piece of evidence or action taken by [Andrew Lester] is dispositive, in the aggregate, we find [DEP] met its burden of demonstrating that [Andrew Lester] 'manages, supervises, alters, controls or has responsibility for the operation' of the [t]anks</u>. 35 P.S. § 6021.103. The [EHB] is sympathetic to the difficulties Andrew Lester encountered trying to reopen or sell Ken's Keystone— whether for his own benefit or that of his father, Kenneth Lester. <u>Nevertheless, we found the testimony of [DEP's] witnesses to be credible and that the weight of evidence is against [Andrew Lester]</u>.

> *Forms/Written Communication*

> [DEP] relies heavily upon various forms signed by [Andrew Lester] to support its belief that Andrew Lester meets the definition of an operator of the [t]anks under the Storage Tank Act and regulations. In November

---

**(continued…)**

act, with a regulated substance, prior to the discovery of the release.

25 Pa. Code §245.1 (emphasis added). Further, federal regulations governing underground storage tanks define the term "operator" as "any person in control of, or having responsibility for, the daily operation of the [underground storage tank] system." 40 C.F.R. §280.12.

22

2009, a third party inspection of the [t]anks was completed. On the [DEP] form documenting the November 2009 Inspection, Andrew Lester is listed as the representative present during the inspection. Andrew Lester checked the box on the form identifying himself as 'Operator' instead of the other possible choices of 'Owner,' 'Employee,' or 'None.' On the signature line of the same inspection form, Andrew Lester listed his title as 'Manager.' In June 2010, after being contacted by Arthur Meade … about violations related to the [t]anks, [Andrew Lester] submitted a Storage Tank Registration Amendment Form, on which he checked two boxes identifying himself as 'Facility Operator' rather than 'Facility Owner,' 'Responsible Official,' or 'Property Owner.' Finally, in November 2013, another third party inspection took place. On the November 2013 Inspection form, [Andrew Lester] again marked the box identifying himself as an 'Operator' rather than 'Owner,' 'Employee,' or 'None.' On the November 2013 Inspection form, however, [Andrew Lester] listed his title as 'Operator' on the form's signature line as opposed to 'Manager'—the designation he used on the November 2009 Inspection form. …

Andrew Lester testified that both [DEP] and the third-party inspectors induced him to, or at least suggested that he, mark his status as 'Operator.' However, [Andrew Lester's] explanations of why he identified himself as an 'Operator' or 'Manager' when he believed himself to merely be an employee were not convincing. The [EHB] notes that the record demonstrates that Arthur Meade highlighted a box for Andrew Lester to check that would designate him as the 'facility operator' on the Registration Amendment Form from June, 2010. Nevertheless, [Andrew Lester] had already represented himself as the 'Operator' on the Operations Inspection form completed approximately seven months prior in November 2009. The [EHB] does not find the various forms entered into the record indicating [Andrew Lester] to be 'Manager' or 'Operator' of the [t]anks to be dispositive, but on the whole, the evidence from these forms weighs in favor of [DEP]. …

23

*Actions*

[DEP] next identifies various actions undertaken by [Andrew Lester] after 2009 to support its contention that Andrew Lester was the operator of the [t]anks. From 2009 until 2014, it appears that [DEP] only spoke with Kenneth Lester once; all other verbal communication about the facility was with Andrew Lester. In February 2010, [Andrew Lester], on his own, attended a meeting with [DEP] at the Regional Office in Meadville to discuss resolving violations with the [t]anks. In addition, there was testimony at the hearing from both Andrew Lester and [DEP] witnesses that, on more than one occasion over the years, [Andrew Lester] attempted to get a delivery of gasoline from a wholesale fuel provider to restart gasoline sales at Ken's Keystone. He was ultimately unsuccessful in those efforts, but in the [EHB's] opinion, it supports a determination the Andrew Lester exercised a certain level of control over, and responsibility for, the [t]anks consistent with that of an operator.

There is no question that [Andrew Lester's] course of conduct is consistent with having greater control over the [t]anks and facility than that of a mere employee. The main issue regarding his actions is whether Andrew Lester was acting in his own interest or for his father's interest as a representative. We generally found [DEP's] witnesses, David Hall and Arthur Meade, to be credible on this point. Neither recalled any statement from Andrew Lester indicating he was just acting on his father's behalf. [Andrew Lester] testified to the contrary at the hearing, but there is nothing in the written record to support his contention that he was acting solely on behalf of his father. Overall, we did not find sufficient evidence to support a conclusion that Andrew Lester's actions were only undertaken as a representative for his father. Reviewing the whole record before us, [EHB] concludes that [DEP] reasonably determined that Andrew Lester exercised sufficient control over and responsibility for the operation of the [t]anks such that he meets the Act's definition of an 'operator.'

EHB Adj. at 9-10, 12-13. The record supports the EHB's necessary factual determinations. See R.R. at 27b, 28b, 30b, 38b; N.T. at 196-97, 206, 210-11.

In turn, the EHB's factual determinations support its ultimate conclusion that Andrew Lester was an "operator" of the tanks in that he "manage[d], supervise[d], alter[ed], control[led] or ha[d] responsibility for the operation of [the] storage tank[s]" in 2009, *before* taking action to temporarily take them out of service in 2010. Section 103 of the Storage Tank Act. Further, after 2009, he continued to manage, exercise control or take responsibility for the tanks.

Also, contrary to Andrew Lester's assertions, and as set forth in the above-quoted excerpt of the EHB's analysis, the EHB did not rely *solely* on the 2010 Storage Tank Registration Amendment Form, which he claims a DEP agent induced him to sign as "operator." Rather, as the EHB explained, its determination rested on a review of the record in its entirety, including documentary evidence and proof of Andrew Lester's actions since 2009, prior to the time he registered the tanks as temporarily out of service.

Further, the EHB rejected Andrew Lester's claim that Arthur Meade induced him to sign the 2010 registration form as "facility operator." In particular, the EHB stated, although Meade highlighted the box for "facility operator" on that form, Andrew Lester previously represented himself as the "Operator" on the operations inspection form he completed approximately seven months prior in November 2009. EHB Adj. at 10; R.R. at 30b. Moreover, Meade testified that, although he highlighted the box for "facility operator" on the 2010 registration

25

form, he *did not* direct Andrew Lester to sign it. R.R. at 22b. Also, as set forth above, the EHB did not rely exclusively on the 2010 Storage Tank Registration Amendment Form in determining Andrew Lester was an "operator" of the tanks. Thus, his assertions on this point fail.

In addition, contrary to Andrew Lester's assertions that there was "nothing to operate," the operation of the tanks did not end merely because Andrew Lester registered the tanks as *temporarily* out-of-service. To that end, operation of the tanks does not end when they are temporarily taken out of service. Indeed, the Storage Tank Act's regulations define "operational life" as: "The period beginning when installation of the tank system has commenced until the time the tank system is properly closed." 25 Pa. Code §245.1 (emphasis added). Here, the tanks were not properly closed.

As set forth above, according to Section 502(c) of the Storage Tank Act, upon abandonment or discontinuance of the use or of an underground storage tank, the owner *and operator* shall remove the tank. Further, after underground storage tanks are temporarily taken out-of-service, owners *and operators* are required to continue operation and maintenance of corrosion protection systems and release detection until the tanks are empty. 25 Pa. Code §245.451(b). The tanks must be emptied within 30 days. 25 Pa. Code §245.451(c). A tank is considered empty when less than an inch of residue remains in the tank. Id. Further, although considered "empty" when containing less than an inch of residue, underground storage tanks are not actually empty of regulated substances. Thus, after the tanks are emptied, owners and operators must still ensure that vent lines

26

are open and functioning and must inspect to ensure lines, pumps, manways and ancillary equipment are capped and secure. 25 Pa. Code §245.451(f).

Moreover, while the Storage Tank Act's regulations allow an underground storage tank to be taken temporarily out-of-service for a period before it must be closed, Andrew Lester's submission of the 2010 Storage Tank Registration Amendment Form delayed removal of the tanks by registering them as temporarily out-of-service. To that end, underground storage tanks that are placed temporarily out-of-service cannot remain in that status indefinitely. Instead, they are required to be permanently closed within three years of being placed temporarily out-of-service, unless DEP grants an extension to this temporary closure period. 25 Pa. Code §245.451(h). Here, Andrew Lester temporarily took the tanks out of service in June 2010; thus, they were required to be permanently closed by June 2013 if they were not put back into service. This did not occur here. And, DEP did not grant an extension to the temporary closure period.

For all the reasons set forth above, we reject Andrew Lester's assertions that the EHB erred in determining that he was an "operator" of the underground storage tanks on the property and, therefore, that he was responsible for closure of the tanks under the Storage Tank Act.

**B. Substantive Due Process/"Taking" Claims**
**1. Contentions**

Andrew Lester next argues that, in his *pro se* appeal to the EHB, he attempted to raise constitutional issues under Article 1, Section 1 of the Pennsylvania Constitution and the 5th Amendment of the U.S. Constitution for the

27

taking of his property, namely his financial resources, to remediate the underground storage tanks. After he retained counsel, his counsel attempted to amend his notice of appeal to raise constitutional claims. However, on DEP's motion, the EHB denied the request. Andrew Lester asserts he has challenged the statute in this appeal as permitted by Section 703 of the Administrative Agency Law, 2 Pa. C.S. §703.

Andrew Lester contends that during the period in which he proceeded *pro se*, he filed a notice of appeal and a pre-hearing memorandum. See R.R. at 7a-17a. In his notice of appeal, he objected to being held jointly and severally liable for the tanks when he was not the owner of the tanks or the property. R.R. at 10a. He also stated he did not operate a petroleum fueling station, but rather only agreed to be a contact person. Id.

Andrew Lester further points out that in his pre-hearing memorandum, he claimed he was being deprived of his personal property contrary to the protections of the 5th Amendment to the U.S. Constitution. R.R at 13a. After he retained counsel, he filed his amended notice of appeal in December 2014. DEP objected to the amendment by filing a motion to strike, which the EHB granted through a January 2015 opinion and order.

Andrew Lester maintains that, in its opinion, the EHB correctly pointed out that DEP has an order that is binding on Kenneth Lester, who owns the gas station and the tanks. The EHB concluded Kenneth Lester was not a party to the appeal; as such, it lacked jurisdiction to address any "taking" claim by Kenneth

Lester. The EHB further stated, "[w]hile it is not necessary to our decision to grant [DEP's] motion, we additionally note that it is undisputed that Andrew Lester has no property interest in the tanks or the land on which they are situated." EHB Op., 1/15/15, at 3. The opinion also states: "Where [Andrew Lester] asserts no ownership interest in the property subject to a [DEP] administrative order, it is difficult to conceive how [Andrew Lester] would have standing to challenge the order as an unconstitutional taking of private property." Id. (citation omitted). Additionally, the opinion rejected Andrew Lester's attempt to file an amended notice of appeal as he did not seek leave to do so. The opinion further stated that, to allow the amendment would unduly prejudice DEP, primarily because discovery closed in July 2014. Andrew Lester asserts that was a time when he did not have counsel.

He further contends the EHB's statement that he did not have an ownership interest in the property should be dispositive here. He asserts that if he is not the owner of the property, DEP should not have pursued this action against him, especially where it has an order against Kenneth Lester, and it has every right to go onto the property and remove the tanks and remediate any contamination, which Andrew Lester denies exists on the property.

Andrew Lester further argues the EHB was incorrect in its reasoning as to the constitutional issues he raised in his appeal. To that end, Section 703 of the Administrative Agency Law states that a party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of that statute on appeal. He asserts it is

29

readily apparent that he was a party to a proceeding before a Commonwealth agency, namely the EHB. Thus, under Section 703, he is not precluded from questioning the validity of the statute on appeal. See, e.g., In re Friedman, 457 A.2d 983 (Pa. Cmwlth. 1983). Here, he contends he is certainly challenging the constitutional validity of the Storage Tank Act as applied to him where he has no ownership interest in the tanks or the property subject to the Storage Tanks Act.

As to the merits of this issue, Andrew Lester argues, Article 1, Section 1 of the Pennsylvania Constitution states that all men are equal and have certain inherent and indefeasible rights in life and property. Here, DEP seeks to impose financial liability by taking his financial resources to cover the cost of removing underground storage tanks in which he has no ownership interest. Again, he asserts, DEP has a valid order against his father, and it can proceed accordingly; but, it cannot impose financial liability on him. He further maintains it is beyond dispute that his financial resources are property protected by the Pennsylvania and U.S. Constitutions. See Commonwealth v. Brown, 8 Pa. Super. 339 (1898). Thus, the money he earned in pursuit of his business of running an automobile repair shop is his property and to take his property to pay the cost of removing the underground storage tanks he neither owns nor has any claim to is taking his property without due process of law. Andrew Lester asserts he was unable to find any reported appellate case directly on this point; however, Pennsylvania courts have addressed analogous situations. See Khan v. State Bd. of Auctioneer Exam'rs, 842 A.2d 936 (Pa. 2004).

Andrew Lester further contends that imposing financial responsibility on him for removal of the tanks in these circumstances is clearly a taking of property without due process on a trumped up theory that he was the "operator" based on a form prepared by a DEP agent. He maintains this violates substantive due process principles. Taylor v. Pa. State Police, 132 A.3d 590 (Pa. Cmwlth. 2016).

## 2. Analysis
### a. Procedure

Procedurally, in his initial *pro se* appeal of DEP's closure order, filed in March 2014, Andrew Lester did not raise any constitutional issues, including his present assertion that the imposition of financial responsibility against him constitutes a taking. See R.R. at 8a-10a. Thereafter, in his *pro se* pre-hearing memorandum filed in November 2014, Andrew Lester briefly asserted:

> Any statute, law or regulation that deprives citizens of the United States of America of personal property has to comply with the United States Constitution. More specifically but not limited to the fifth and fourteenth amendments [sic]. Any law that deprives personal property simply because the property has not been used for a set amount of time seems unlawful unconstitutional and therefor[e] null and void.

R.R. at 13a.

Thereafter, Andrew Lester, through counsel, attempted to file an amended notice of appeal in which he sought to add a claim that the closure order constituted a taking of property in violation of Article I, Section 1 of the Pennsylvania Constitution and the 5th Amendment of the U.S. Constitution. R.R.

31

at 56b-57b. DEP filed a motion to strike the amended notice of appeal. Certified Record (C.R.), Item No. 15. The EHB heard argument on DEP's motion to strike. It then issued an order granting the motion to strike, which limited the issues presented at the EHB hearing to those set forth in Andrew Lester's original notice of appeal. C.R., Item No. 16. The EHB subsequently issued an opinion explaining the reasons for its order in which it set forth "numerous problems which independently and collectively counseled [it] against adjudicating the proposed additional [taking] claim." C.R., Item No. 17 at 2.

First, the EHB stated, by its own terms, the amended notice of appeal sought to add a claim on behalf of a person who was not a party to the appeal. To that end, although DEP directed its closure order to both Kenneth Lester and Andrew Lester, Kenneth Lester did not appeal. Thus, Kenneth Lester was not a party to the appeal. As a result, the EHB stated it lacked jurisdiction to adjudicate a "taking" claim on Kenneth Lester's behalf.

Further, while not necessary to its decision to grant the motion to strike, the EHB noted it was undisputed that Andrew Lester had no property interest in the tanks or the property. To that end, DEP's closure order described Kenneth Lester as both the owner of the property and the tanks. Additionally, Andrew Lester specifically denied any ownership interest. Where Andrew Lester asserted no ownership interest in the property, the EHB stated, it was difficult to conceive how he had standing to challenge the closure order as an unconstitutional taking of private property.

32

The EHB set forth two additional reasons to strike Andrew Lester's amended notice of appeal. First, it had discretion to permit a party to amend his appeal after the 20-day period to amend as of right elapsed. 25 Pa. Code §1021.53(b). However, a party must file a motion for leave to amend. Id. Further, the party is required to verify and support a motion for leave to amend with affidavits. 25 Pa. Code §1021.53(c). Here, Andrew Lester neither sought leave to amend nor supported the amended notice of appeal with an affidavit.

Finally, the EHB stated, its discretion to grant leave to amend was limited to those situations in which "no undue prejudice will result to the opposing parties." 25 Pa. Code §1021.53(b). Here, discovery closed in July 2014, and the hearing was already rescheduled once. The EHB stated Andrew Lester made no effort to show DEP would not suffer prejudice by the addition of an entirely new claim on the eve of the hearing that arguably implicated a person who was not a party to the appeal. Thus, the EHB found DEP would be severely prejudiced.

As such, the EHB rejected Andrew Lester's attempt to file an amended notice of appeal to include a claim that the closure order resulted in a "taking" of his property. Andrew Lester does not directly and persuasively respond to all of the various reasons the EHB set forth in its opinion in support of its denial of his request to amend his notice of appeal. Additionally, in its brief to this Court, DEP does not address the EHB's opinion granting DEP's motion to strike Andrew Lester's amended notice of appeal.

Nevertheless, we question the appropriateness of the EHB's opinion granting DEP's motion to strike Andrew Lester's amended notice of appeal. To that end, contrary to the EHB's determination, Andrew Lester arguably has standing to raise a "taking" claim as it pertains to the loss of his financial resources arising from his compliance with the closure order. Additionally, the EHB's finding regarding prejudice to DEP is questionable. Specifically, the EHB *presumed* prejudice. However, the EHB did not specify what prejudice DEP would suffer as a result of Andrew Lester's requested amendment to his notice of appeal to add a "taking" claim. Indeed, the issue of whether the closure order resulted in a "taking" of Andrew Lester's financial resources appears to be a pure legal issue, which would not require additional discovery or further factual development. Because we question the propriety of the EHB's action on the amended notice of appeal, we address Andrew Lester's intertwined substantive due process and "taking" claims on their merits below.

### b. Substantive Due Process

A state's police power is one of the most essential powers of government that allows it to promote the public health, morals or safety and the general well-being of the community. Adams Sanitation Co., Inc. v. Dep't of Envt'l Prot., 715 A.2d 390 (Pa. 1998). The state's police powers are also one of the state's least limitable powers. Id. While the state's exercise of its police power often causes tension between the Commonwealth and property owners, courts will not invalidate the Commonwealth's exercise of its police powers unless it is performed in an unreasonable and arbitrary manner. Id. Thus,

> [a]lthough the police power may, indeed, seem harsh in
> its exercise, [and] usually is on some individual … the

34

imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. Therefore as long as the Legislature exercises that power in a reasonable and nonarbitrary manner, the judiciary will not invalidate the enactment.

Nat'l Wood Preservers, Inc. v. Dep't of Envtl. Res., 414 A.2d 37, 43 (Pa. 1980) (citations and quotations omitted).

A party challenging the constitutionality of an exercise of the state's police power affecting a property interest bears a heavy burden of proof. Id. The standard to be used by courts when considering whether there has been an unconstitutional exercise of the state's police power has been stated as follows:

To justify the State in … interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

Adams Sanitation, 715 A.2d at 395 (quoting Lawton v. Steele, 152 U.S. 133, 137 (1894)).

Here, Andrew Lester does not dispute that DEP is acting with a valid objective when exercising its authority on behalf of the general public to prevent the proliferation of unused or abandoned underground storage tanks and to protect the environment from releases of petroleum products in underground storage tanks. To that end, Section 102 of the Storage Tank Act states (with emphasis added):

**(a) Findings enumerated.--**The General Assembly of the Commonwealth finds and declares that:

35

(1) The lands and waters of this Commonwealth constitute a unique and irreplaceable resource from which the well-being of the public health and economic vitality of this Commonwealth is assured.

(2) These resources have been contaminated by releases and ruptures of regulated substances from both active and abandoned storage tanks.

(3) Once contaminated, the quality of the affected resources may not be completely restored to their original state.

(4) When remedial action is required or undertaken, the cost is extremely high.

(5) Contamination of groundwater supplies caused by releases from storage tanks constitutes a grave threat to the health of affected residents.

(6) Contamination of these resources must be prevented through improved safeguards on the installation and construction of storage tanks.

**(b) Declaration.--**The General Assembly declares these storage tank releases to be a threat to the public health and safety of this Commonwealth and hereby exercises the power of the Commonwealth to prevent the occurrence of these releases through the establishment of a regulatory scheme for the storage of regulated substances in new and existing storage tanks and to provide liability for damages sustained within this Commonwealth as a result of a release and to require prompt cleanup and removal of such pollution and released regulated substance.

35 P.S. §6021.102.

Further, requiring owners *and operators* to close abandoned underground storage tanks is reasonably necessary to accomplish the above-stated

36

purposes. Indeed, an express purpose of the Storage Tank Act is to protect land and water from contamination by releases and ruptures of regulated substances from both active *and abandoned* storage tanks. Id. Additionally, as DEP points out, where, as here, an owner abandons the underground tanks and leaves the jurisdiction, the operator's liability may be the only means of reducing the burden on taxpayers.

Andrew Lester appears to focus his argument on his claim that the means must not be "unduly oppressive upon individuals." In Adams Sanitation, our Supreme Court observed that there are two general factors of significance in a judicial determination of whether governmental action is unduly oppressive. The first consideration is the economic impact of the regulation on the property holder. Id. The second factor is the character of the governmental action. Id. The greater the extent to which governmental interference with property can be characterized as a physical intrusion, the more likely it is that such interference will be considered an unreasonable exercise of police power. Id.

Here, Andrew Lester claims that application of the Storage Tank Act is unduly oppressive because it imposes financial responsibility on him despite the fact that he is not the property owner. Our Supreme Court rejected an analogous claim in National Wood Preservers. There, the appellants asserted Section 316 of the Clean Streams Law[9] was unduly oppressive because it imposed liability on them to remedy water pollution damage solely on the basis of their ownership or

---

[9] Act of June 22, 1937, P.L. 1987, added by the Act of August 23, 1965 P.L. 372, as amended, 35 P.S. §691.316.

37

occupancy of the land at issue. They argued it was unconstitutional for the Department of Environmental Resources (now DEP) to issue a corrective order to a landowner or occupier absent a showing of the party's responsibility for causing the polluting condition. The Supreme Court rejected this argument, concluding the corrective order was based on far more than mere ownership or occupancy. Instead, the corrective order was based on legislation designed to eliminate all water pollution, and the EHB's findings that a substance, determined to be pollution, resided under the appellants' land and could feasibly be removed. Thus, there was a reasonable and concrete basis for the corrective order. Additionally, the Court pointed to U.S. Supreme Court cases, which hold that a property holder's responsibility for the condition to be regulated is not an important factor in assessing the validity of the regulation. Thus, "the validity of an exercise of police power over land depends little upon the owner or occupier's responsibility for causing the condition giving rise to the regulation." Nat'l Wood Preservers, 414 A.2d 45.

Here, the EHB's adjudication upheld DEP's closure order requiring Andrew Lester to permanently close the underground storage tanks, which he temporarily removed from service several years earlier. DEP's closure order comports with the legislative purpose of the Storage Tank Act, which is to eliminate contamination and remove abandoned underground storage tanks. The fact that Andrew Lester must expend financial resources to do so does not render the requirement unduly oppressive. As set forth above, the Storage Tank Act expressly imposes such responsibility on owners *and operators*. Further, the EHB's supported factual determinations reveal that Andrew Lester acted as an

"operator" of the underground storage tanks; thus, the imposition of financial responsibility on him for their permanent closure is not so disproportionate to the degree of responsibility he exercised as to render it unduly oppressive. And, the character of the governmental action here cannot be characterized as a "physical intrusion" so as to render any governmental interference with property "an unreasonable exercise of police power." Adams Sanitation, 715 A.2d at 395.

Finally, while Andrew Lester briefly references Khan and Taylor for the general propositions that are relevant when considering a substantive due process challenge, he does not explain how these cases apply here. See Pet'r's Br. at 21-23. Indeed, the Court in Khan ultimately rejected a substantive due process challenge to a provision of the Auctioneer and Auction Licensing Act (now referred to as the Auctioneer Licensing and Trading Assistant Registration Act),[10] while in Taylor, this Court overruled preliminary objections to an individual's claim that the Sexual Offender Registration and Notification Act[11] violated his substantive due process rights by infringing on his fundamental constitutional right to reputation. In the absence of further explanation by Andrew Lester, it is unclear how his citations to Khan and Taylor support his substantive due process claim.

### c. "Taking"

In addition, to the extent Andrew Lester claims that requiring him to expend his financial resources in order to permanently close the underground storage tanks constitutes a "taking," this argument fails. First, as the EHB

---

[10] Act of December 22, 1983, P.L. 327, 63 P.S. §§734.1-734.34.

[11] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§9799.10-9799.41.

explained, Andrew Lester lacks standing to assert a "taking" claim on behalf of his father, Kenneth Lester, who did not appeal the closure order.

Moreover, Andrew Lester's "taking" claim on his own behalf fails. To that end, "[i]t is well-settled that the exercise of the police power is not a taking." Estate of Blose, 889 A.2d 653, 659 (Pa. Cmwlth. 2005) (citing Commonwealth v. Barnes & Tucker Co., 371 A.2d 461 (Pa. 1977)). However, when regulation "goes too far," it will be recognized as a taking. Domiano v. Dep't of Envtl. Res., 713 A.2d 713, 716 n.4 (Pa. Cmwlth. 1998) (citation omitted).

In United Artists' Theater Circuit Inc. v. City of Philadelphia, 635 A.2d 612 (Pa. 1993), the Pennsylvania Supreme Court enumerated three conditions for determining whether a valid regulatory restriction constitutes a taking requiring just compensation (which are essentially identical to the factors set forth in our analysis of the substantive due process claim).

> (1) the interest of the general public, rather than a particular class of persons, must require governmental action;
>
> (2) the means must be necessary to effectuate the purpose; and
>
> (3) the means must not be unduly oppressive upon the property holder, considering the economic impact of the regulation, and the extent to which the government physically intrudes upon the property.

In United Artists', the Court recognized that "action in the form of regulation can so diminish the value of property as to constitute a taking." Id. at

40

617 (citations and emphasis omitted). "However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation." Id.; see also City of Pittsburgh v. Weinberg, 676 A.2d 207 (Pa. 1996); In re Silverman, 90 A.3d 771 (Pa. Cmwlth. 2014).

Here, as set forth above in our analysis of Andrew Lester's substantive due process claim, the interest of the general public, rather than a particular class of persons, requires governmental action (with regard to closure of abandoned underground storage tanks), and the means (requiring owners and operators to remove or seal abandoned tanks) are clearly necessary to effectuate this purpose. Additionally, as explained in greater detail above, the fact that Andrew Lester must expend financial resources to do so does not render the requirement unduly oppressive. In short, because the action at issue here is not "unduly oppressive," the required underground storage tank closure does not satisfy the elements for a "taking" requiring just compensation.

Moreover, where the Commonwealth validly employs its police power in a reasonable manner to abate an immediate public nuisance, there can be no finding of an unconstitutional "taking" through the imposition of an abatement order despite the impact that this exercise of the police power may have on an appellant. Barnes & Tucker (abatement of acid mine discharges into streams, where such discharges were found to be detrimental and a nuisance, was a valid exercise of the police power, not a taking).

41

Here, as set forth above, the protection of the public from contamination caused by petroleum products is a valid state objective. Section 101(a) of the Storage Tank Act.

In addition, Section 1304 of the Storage Tank Act makes an owner or operator's failure to close an underground storage tank (when required to do so) a public nuisance. It states (with emphasis added):

> <u>A violation of this act or of any order or regulation adopted by [DEP]</u> or of permits issued by [DEP] <u>shall constitute a public nuisance</u>. [DEP] shall have the authority to order any person causing a public nuisance to abate the public nuisance. In addition, [DEP] or any Commonwealth agency which undertakes to abate a public nuisance may recover the costs of abatement in an action in equity brought before any court of competent jurisdiction. Whenever such nuisance shall be maintained or continued contrary to this act or such orders, regulations or permits the same may be abatable in the manner provided by this act. Any person who causes such public nuisance shall be liable for the cost of abatement.

Id.

As Andrew Lester states in his brief, the owner of the underground storage tanks, his father, left the Commonwealth and filed for bankruptcy. And, as set forth above, the EHB properly found Andrew Lester was an operator of the tanks. The failure to permanently close the tanks based on the facts presented here violates the Storage Tank Act and its regulations, and, therefore, constitutes a public nuisance. Id. Thus, requiring Andrew Lester, as an operator, to remove the tanks that were abandoned by their owner, is a proper exercise of the

42

Commonwealth's police power to address a public nuisance and is not a "taking." Barnes & Tucker, 371 A.2d at 467 ("[G]iven our determination that the Commonwealth is validly employing its police power in a reasonable manner to abate the immediate public nuisance, there can be no finding of an unconstitutional 'taking' by the imposition of the present abatement order, despite the impact this exercise of the police power may have on the appellant.") (citations omitted).

For all the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Lester,              :
          Petitioner       :
                                   :
          v.                    :     No. 1778 C.D. 2015
                                   :
Department of Environmental        :
Protection,                       :
          Respondent     :

## **O R D E R**

**AND NOW**, this 13th day of January, 2017, the order of the Environmental Hearing Board is **AFFIRMED**.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Lester,                              :
                          Petitioner        :
                                            :
                v.                          :     No. 1778 C.D. 2015
                                            :     Argued:  November 15, 2016
Department of Environmental                 :
Protection,                                 :
                          Respondent        :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge


CONCURRING OPINION BY
JUDGE COHN JUBELIRER                    FILED:  January 13, 2017


I concur with the Majority's decision to affirm the Order of the Environmental Hearing Board (EHB) dismissing Andrew Lester's appeal of a Department of Environmental Protection (DEP) administrative order requiring him to permanently close the underground storage tanks at Ken's Keystone based upon his status as an "operator" under the Storage Tank and Spill Prevention Act (Storage Tank Act).[1]  I write separately to express my concern, similar to the EHB's, that the language on DEP's storage tank forms does not clearly communicate the responsibilities and potential liabilities under the Storage Tank

---

[1] Act of July 6, 1989, P.L. 169, as amended, 35 P.S. §§ 6021.101-6021.2104.  "Operator" is defined as "[a]ny person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank."  Section 103 of the Storage Tank Act, 35 P.S. § 6021.103; see also 25 Pa. Code § 245.1 (same definition).

Act and the applicable regulations that would arise by designating oneself as an "operator" on such forms, as Andrew Lester did at times in this case.

I agree with the Majority that the record in its entirety supports the EHB's conclusion that Andrew Lester was an operator of the tanks. However, I question whether Andrew Lester understood the nature of the forms he was signing or the responsibilities and liabilities that would be imposed upon him if he were determined to be an "operator" under the Storage Tank Act and applicable regulations.

The 2010 Storage Tank Registration Amendment Form, which Andrew Lester signed and checked "Facility Operator" below his signature, contains a certification that the person signing the form represents to DEP that he or she owns or represents the owner of the storage tank(s) and is "aware of the responsibilities and potential liabilities *as an 'owner'* arising under the Storage Tank . . . Act . . . and all applicable regulations." (Supplemental Reproduced Record (S.R.R.) at 27b (emphasis added).) The other options on that form were "Facility Owner," "Responsible Official," and "Property Owner." (Id.) On the 2009 and 2013 Underground Storage Tank Facility Operations Inspection Forms, Andrew Lester printed his name under "Representative Present During Inspection" and checked the box below that for "Operator." (S.R.R. at 30b, 38b.) The other options on the forms were "Owner," "Employee," and "None." To the right of that on the 2009 form, there is a name and address line for "Operator (if different than owner)," which was left blank. On the 2013 form, there are lines for "Owner (must be a person)" and "Operator (if different than owner)," both of which were left blank. Andrew Lester signed and printed "Manager" as his title on the 2009 form, and "Operator" as his title on the 2013 form. Above the signature line on both forms,

there is a certification stating, *inter alia*, that the person signing the form is "*the representative of* the owner or operator" and that the person has reviewed the completed inspection report. (S.R.R. at 30b, 38b (emphasis added).)

Notably, the 2009 and 2013 inspection forms and the 2010 amendment form, in particular, say nothing about the responsibilities and potential liabilities of an "operator," which I believe is problematic given that *both* owners *and* operators may be held liable under the Storage Tank Act and the applicable regulations.[2] Andrew Lester testified that he "really didn't understand what [checking the box for "Operator"] meant[,]" that he saw himself as an employee, and further, with regard to his checking "Facility Operator" on the 2010 amendment form, Andrew Lester stated that he did so

> because directly above that, it states that my signature represents to [DEP] that I own or represent the owner of the tanks and am aware of the responsibilities and potential liabilities as an owner . . . [a]nd I wasn't the owner. And I did not want to accept liability for the tanks. So I didn't want to check owner or owner's representative.

(Hr'g Tr. at 119, 126.) The EHB recognized that it was not clear "that . . . [Andrew Lester] truly understood the nature of the forms or that his designation on the forms would impose legal obligations upon him." (EHB Adjudication at 10-11.) The EHB further acknowledged the troubling nature of the many inconsistencies in how DEP communicated with Andrew Lester, in writing, about the tanks, "*given the serious consequences that can result from a determination that a party is an operator*," and that "[t]hose persons who are potentially subject

---

[2] Section 502(c) of the Storage Tank Act, 35 P.S. § 6021.502(c), provides that both owners and operators are responsible for removing an underground storage tank and its contents upon the tank's abandonment or discontinuance of use or active operation of the tank.

RCJ - 3

to . . . [DEP's] Storage Tank Act regulations and obligations deserve clear communication from . . . [DEP] regarding their status." (Id. at 10-11 (emphasis added).)

Moreover, despite the fact that Andrew Lester was determined to be an operator based on his actions dating back to November of 2009, it appears there was some confusion as to who, exactly, would be considered an "operator" for purposes of the Storage Tank Act, and new regulations in that regard were promulgated a month later. While there is no dispute that both owners and operators are liable for the closure of underground storage tanks, the regulations provide that owners are required to designate and train operators and that facilities may not operate after August 8, 2012, unless operators have been designated and trained. See 25 Pa. Code § 245.436 (adopted Dec. 26, 2009).[3] The regulations also comprehensively explain the responsibilities and duties of each class of operators

---

[3] DEP's storage tank regulations provide, in pertinent part, as follows:

(a) *Requirement for trained operators*.

(1) An owner shall designate Class A, Class B and Class C operators for each underground storage tank system or facility that has underground storage tanks permitted to operate by . . . [DEP].

(2) A facility may not operate after August 8, 2012, unless operators have been designated and trained as required in this section, unless otherwise agreed upon by . . . [DEP].

\* \* \*

(4) Designated operators shall successfully complete required training under subsection (c) by August 8, 2012.

\* \* \*

25 Pa. Code § 245.436(a)(1)-(2), (4).

and the operator training requirements.[4]  In his pre-hearing memorandum to the EHB, Andrew Lester claimed that he had not been trained.  (Andrew Lester's Pre-Hearing Memorandum, R.R. at 14a (asserting that "an operator also is specified as a class A, B or C operator.  [A] class [C] operator must be trained before beginning their [sic] job duties.  I was never trained or certified as a Class A, B or C operator[.]").)  The EHB did not address this contention in its adjudication.  I also note that the "Operator Training" section on the *2013* inspection form was left blank, notwithstanding the tanks' temporarily out-of-service designation.  (S.R.R. at 44b.)

Based on these concerns, if the EHB and the Court would have relied on the forms Andrew Lester signed as the basis for finding him an "operator" of the tanks, I would require the EHB to more thoroughly consider the confusing nature of the forms.  However, given the other evidence in this record upon which the EHB relied in finding Andrew Lester to be an "operator" of the tanks, including that almost all verbal communication from DEP about the facility was with Andrew Lester, he attended a meeting on his own with DEP to discuss the tanks' violations, and he attempted to get deliveries of gasoline from a wholesale fuel provider on numerous occasions, I agree that the Order should be affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[4] See 25 Pa. Code § 245.436(b)(1)-(3), (c)-(e).